MERCANTILE TRUST CO. v. KANAWHA & O. RY. CO. et al., (ADAMS EXP. CO., Intervener.)

(Circuit Court of Appeals, Sixth Circuit. July 12, 1893.)

No. 70.

1. APPEAL—PARTIES—WHO MUST JOIN.

After confirmation of a foreclosure sale of a railroad, a decree was made, declaring certificates issued by a receiver in a former suit a prior lien on the proceeds of the sale, which were less than one-half the mortgage indebtedness. There was no liability for a deficiency on the part of the stockholders, or otherwise. *Held* that, the railroad corporation having become practically defunct by the decree of foreclosure, the sale, and the subsequent decree of confirmation, and having no interest in the proceeds, it need not be joined as an appellant from the decree, but that the appeal might be prosecuted by the complainant alone. Hardee v. Wilson, 13 Sup. Ct. Rep. 39, 146 U. S. 179, distinguished.

2. SAME—SEVERANCE.

After confirmation of the sale, stipulations as to evidence were entered into between the holder of the certificates, who had intervened in the suit, and the complainant, and thereafter the court proceeded as if the railway company had no interest in the proceeds. *Held* a substantial severance of the interests of complainant and the defendant railroad corporation.

3. RAILROAD COMPANIES—MORTGAGES—FORECLOSURE—VESTING TITLE FREE FROM LIENS—RECEIVER'S CERTIFICATES.

A final decree in a foreclosure suit against a railroad company, whereby the purchasers at the foreclosure sale are vested with a title free from all liens for receiver's debts, operates to set aside so much of a previous order authorizing the issue of receiver's certificates as made them a paramount lien on the road, and transfers the lien of the certificates, if any, to the proceeds of the sale.

4. SAME—DUTY OF HOLDER OF RECEIVER'S CERTIFICATES.

The holder of receiver's certificates is put upon inquiry as to all that has been done in the litigation in which the certificates were authorized, and is charged with notice of all subsequent proceedings therein, and that by final action of the court the validity or security of the certificates may be prejudicially affected; the holder's duty being to advise the court of his claim at an early day.

5. SAME—LACHES—RES JUDICATA.

An order authorizing a receiver in a foreclosure suit against a railroad company to issue certificates was made ex parte, the issue was without notice to the court or to the parties to the suit, and the proceeds were not used for the purpose specified in the order, or for any other purpose of the receiver, or for the benefit of the property or the parties to the cause. The holder made no demand for three years, until after the foreclosure sale had been confirmed and the debts of the receiver judicially ascertained, the certificates in question not being included, and a final decree of confirmation and distribution had been made. *Held*, that the holder of the certificates was guilty of gross laches, and was estopped by the decree from seeking payment of his claim against the purchasers or distributees. Vilas v. Page, 13 N. E. Rep. 743, 106 N. Y. 439, distinguished.

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

In Equity. Suit by the Mercantile Trust Company against the Kanawha & Ohio Railway Company and others for foreclosure of a

mortgage. The Adams Express Company intervened by petition, claiming a lien prior to the mortgage for certificates issued to the express company by a receiver in a previous suit for foreclosure of a former mortgage on the same property. A decree was made declaring said certificates a first lien on the property. Complainant appeals. Reversed.

Statement by TAFT, Circuit Judge:

The principal action in the court below was by the Mercantile Trust Company, as trustee, to foreclose a railroad mortgage against the Kanawha & Ohio Railway Company. The mortgaged road lay partly in Ohio and partly in West Virginia. The decree, which was here appealed from, was based on an intervening petition filed by the Adams Express Company, and declared that certain receiver's certificates held and owned by the intervener were a lien upon the railroad, prior in right to the mortgage of complainant, and directed their payment, with interest, in the sum of about $53,000, out of the proceeds of sale. The road had been bid off at a little more than half of the mortgage debt. The certificates ordered paid had been issued by Thomas R. Sharp, receiver of the part of the railroad lying in West Virginia, appointed by the district court of the United States for West Virginia, exercising circuit court powers, in a previous foreclosure suit begun in that court in November, 1883, by the Central Trust Company against the then owner of the railroad, the Ohio Central Railway Company. The result of that suit was the purchase of the railroad at the foreclosure sale by a committee of the then bondholders, and the organization by them of the Kanawha & Ohio Railway Company, the defendant and mortgagor below, as a consolidated corporation of Ohio and West Virginia, to own and operate it. The force of the receiver's certificates held by the appellee, as liens upon the railroad, depended upon the proceedings in the West Virginia suit in which they were issued, and reference must be made to those proceedings in some detail.

As already stated, the West Virginia suit was begun in November, 1883, and on the next day Sharp was appointed receiver to take charge of and operate so much of the road as lay in West Virginia. On December 13, 1883, the court entered an order as follows: "On reading and filing the verified petition of Thomas R. Sharp, receiver of the Ohio Central Railroad, and it appearing therefrom that it is necessary for the protection and preservation of the property of said railroad company that certain bridges should be repaired, and certain portions of roadbed of said railroad be ditched and ballasted, and certain necessary expenses of maintenance, repair, and management be provided for, and that a sum not exceeding fifty thousand dollars will be required for the purposes aforesaid, on motion of William H. De Lancy, solicitor for said receiver, ordered, that said Thomas R. Sharp, receiver of the Ohio Central Railroad Company, be, and he is hereby, authorized and empowered to issue certificates of indebtedness to an amount not exceeding fifty thousand dollars, and bearing interest at the rate of six per cent. per annum, and payable not exceeding twelve months after date, at the city of New York, for the purposes aforesaid, with power to renew the same; that said certificates shall be a first and paramount lien on so much of the property of the said Ohio Central Railroad Company now in his possession, or which he may hereafter get actual possession of, and the revenues thereof; that the said receiver shall not negotiate said certificates at less than their face value without the further order of the court. And it is further ordered that the said receiver pay said certificates so issued as aforesaid, and the interest thereon, out of the revenues of said railroad company, as received by him from time to time."

And on March 24, 1884, the court modified the foregoing order as follows: "On reading and filing the verified petition of Thomas R. Sharp, receiver of the Ohio Central Railroad Company, and it appearing therefrom that the said receiver cannot sell or negotiate the certificates of indebtedness heretofore authorized to be issued by order of this court dated the 13th of December, 1883, without paying a commission for the sale or negotiation of the same: Now, on motion of William H. De Lancy, solicitor for said peti-

tioner, it is ordered that said Thomas R. Sharp, receiver of the Ohio Central Railroad Company, be, and he is hereby, authorized, empowered, and directed to sell or negotiate the certificates of indebtedness heretofore authorized to be issued by him by order of this court dated the 13th of December, 1883, upon such terms and at such rates as he may deem proper, and as he may be able to obtain."

Sharp, the receiver, issued 10 certificates to the Adams Express Company, all like the following:

"Ohio Central Railroad Co., Receiver's Office, April 16, 1884.

"In pursuance of an order of the district court of the United States for the district of West Virginia, this is to certify that Thomas R. Sharp, as receiver of the Ohio Central Railroad Company, will pay to Adams Express Company, or order, one day after date, the sum of fourteen thousand three hundred dollars, with interest at the rate of six per cent. per annum. This certificate is a first and paramount lien on the property and revenue of the Ohio Central Railroad Company in possession of Thomas R. Sharp, receiver, is transferable by indorsement, and payable at 50 Broadway, New York city.

"Thos. R. Sharp,
"Receiver Ohio Central Railroad Co."

The amounts of the ten certificates varied. The first three were issued on the 16th of April, 1884, and the last one April 3, 1885, and they aggregated $35,535.39. The money received by Sharp from the Adams Express Company was not used for the purpose specified in the order of December 13, 1883, or for any other purpose of the receiver, or for the benefit of the property held therein or of the parties to the cause. Neither the district court of West Virginia, nor the purchasers, nor the Mercantile Trust Company, nor the Kanawha & Ohio Railway Company, knew of the existence of said certificates until three years after they were issued, and until two years after the cause in which their issue had been authorized had been finally adjudicated, and had completely passed from the jurisdiction of the court. The Adams Express Company never demanded of the Kanawha & Ohio Railway Company payment of the certificates, nor in any way, until the filing of its intervening petition in the action below, did it seek to enforce the lien which it claimed on the railroad property. On May 26, 1885, the decree of the foreclosure was entered in the action in the West Virginia district court. The decree of sale provided for the payment of $50,000 of the purchase money in cash, and for the payment of the remainder in bonds and coupons, to be taken at such value as the holders would be entitled to receive on distribution if the entire purchase price had been paid in money. The decree further provided: "But, so far as the purchaser shall pay the purchase money in bonds and coupons, such payments shall not be final until the same is reported to, and shall be supervised and approved by, the court. It is further ordered, adjudged, and decreed that the funds arising from said sale shall remain subject to the further order of the court, and that all questions touching said fund and the distribution thereof, not disposed of by the foregoing decree, are reversed."

The property was sold to Davis, Gallup, and Homans, purchasing trustees for the bondholders, for $600,000, and $50,000 was deposited, as required by the decree. The purchasing trustees also transferred to the depository of the court 5,103 of the mortgage bonds secured by the mortgage which was foreclosed. The sale was confirmed, but the decree of confirmation provided that, because it appeared that the portion of said purchase price necessary to be paid in cash could not be fully ascertained and determined until the coming in of the report thereinafter ordered and the action of the court thereon, the conveyance which the commissioners were ordered to execute to the purchasers should be made subject to the payment of any sums which the court might thereafter direct to be paid in cash on account of said purchase money, and that a vendor's lien should be reserved in said deed on the property and premises thereby conveyed for the security of such payment, with the right to resell on rule said property and premises, or any part thereof, if such payment should not be made within 30 days from

the order of the court to that effect. The decree further appointed Joseph Ruffner a commissioner to ascertain and report to the court the amount of indebtedness due from the said receivers, or either of them, and he was ordered to file his report at or before the special term to be held in the month of January, 1886. The two receivers referred to were Sharp, appointed in West Virginia, and another appointed by the circuit court for the southern district of Ohio in an ancillary suit to sell in foreclosure the Ohio part of the road. The same decrees and orders of sale and confirmation were entered concurrently in both courts.

On the 19th of December, 1885, the special commissioners conveyed the railroad to the purchasing trustees, and the conveyance contained this qualifying clause: "This conveyance is made subject to the payment of any sums which either of said courts may direct to be paid in cash on account of the purchase money, and a vendor's lien is hereby reserved upon the property and premises hereby conveyed, for the security of such payment, with the right reserved to either of said courts to resell on rule said property and premises, or any part thereof, if any such payment shall not be made within thirty days after the order of either of said courts to that effect."

The purchasing trustees conveyed the West Virginia part of the road to a corporation under the laws of West Virginia, known as the Kanawha & Ohio Railway Company, and the Ohio part of the road to the Ohio & Kanawha Railway Company, a corporation organized under the laws of Ohio. The deeds by which these conveyances were made contained the following: "Subject, however, to any and all obligations and liabilities assumed or incurred by the parties of the first part hereto, or by the committee hereinbefore named, in the various acts and things done by them, in making or carrying into effect the said agreement of organization, or in making the sale or procuring the purchase of the property hereby conveyed."

April 19, 1886, the two new companies were consolidated under the name of the Kanawha & Ohio Railway Company, the agreement subjecting the consolidated company to all the obligations of the two constituent companies.

On May 26, 1886, Commissioner Ruffner, appointed in the decree of confirmation and sale, filed his report, which contained a statement of the liabilities of Thomas R. Sharp, receiver, in which report the name of the Adams Express Company did not appear, nor did it appear therein that any certificates had been issued by the receiver. On the 10th day of June, 1886, the West Virginia court entered its further decree, in which was recited the report of Sharp, receiver, showing his disbursements made in accordance with the previous order of the court. Sharp's report, Ruffner's report, and the conveyances made by the commissioners to the purchasing trustees were approved and confirmed. The decree required the purchasers to pay to the receiver an additional sum on the purchase price in money, to enable the receiver to pay all his indebtedness, as reported by Ruffner and approved by the court. The total cash paid by the purchasers was $176,000. The remainder of the purchase money they were permitted to pay by turning over bonds of such an amount that, if the whole purchase price had been paid in money, the holders of these bonds would have been entitled to receive, on distribution, such remainder. The decree concluded: "It is further ordered, adjudged, and decreed that upon payment of the balance of the purchase money aforesaid, and the sums herein directed to be paid by them, the said Thomas R. Sharp, as special commissioner, shall make, execute, acknowledge, and deliver to said purchasers or their assigns, as they may direct, good and sufficient deeds of release, releasing and discharging all the liens upon all the property herein sold and conveyed to said purchasers, which were retained and reserved in and by the said decree of confirmation of sale made herein on the 12th day of December, 1885, and by deed of the special commissioners of sale to the said purchasers; and, upon such payments as aforesaid being made, it is declared and decreed that said liens are released and discharged."

On October 13, 1887, Thomas R. Sharp, special commissioner, having theretofore received payment of all sums directed to be paid to him in the decree

of June 10, 1886, executed and delivered to the Kanawha & Ohio Railway Company his deed of release in accordance with the decree, whereby he released and quitclaimed unto the railroad company all the property mentioned and described in his deed of December 19, 1885; and the deed further contained the following clause: "And the said Thomas R. Sharp, as special commissioner as aforesaid, doth hereby release and discharge all the liens upon all the property in all the causes aforesaid sold and conveyed, which were retained and reserved in and by the said decree of confirmation of sale made in said causes in the district court of the United States for the district of West Virginia on the 12th day of December, 1885, and by said decree of confirmation of sale made in said causes in the circuit court of the United States for the southern district of Ohio, eastern division, on the 15th day of December, 1885, and by the deed of the special commissioners aforesaid, except the lien hereinbefore expressly reserved and retained upon the property in the state of Ohio."

The lien so reserved had no relation whatever to the claim of the Adams Express Company herein.

Before this appeal was heard on its merits, a motion was made on behalf of appellee to dismiss it on the ground that the decree appealed from was a joint decree against the Central Trust Company and the Kanawha & Ohio Railway Company, and that the trust company had appealed without either joining the defendant railway company or instituting any proceeding in the nature of a summons and severance. The facts upon which the motion to dismiss turned were as follows:

The claim of the Adams Express Company was for a lien prior to and adverse to the mortgage which was the basis of the main action, and the express company was therefore neither a necessary nor a proper party to the action as an intervener, but it was allowed to file its petition under the following agreement spread upon the minutes of the court: "The parties hereto consent to said application and to the adjudication of said lien in this suit; it being agreed that the sale under the decree herein shall be free from said alleged lien, and that the same, if adjudicated in favor of said Adams Express Company, shall be transferred to the proceeds of sale, and paid out of the same."

This entry was made upon the same day upon which the decree of sale and foreclosure was entered. The intervening petition was filed at once, and in due course the Adams Express Company and the Kanawha & Ohio Railway Company filed answers. Thereafter, on March 4, 1890, the railroad was sold under the decree, and the sale was confirmed April 7, 1890. Upon April 27, 1891, and upon May 5, 1892, stipulations as to the evidence to be used upon the hearing of the express company's petition were entered into, and subsequently placed on the minutes of the court. These stipulations were signed by the solicitors for the Central Trust Company and the Adams Express Company. The solicitor for the defendant railway company did not sign either stipulation.

On June 6, 1892, the circuit court entered the decree appealed from, as follows: "This cause coming on to be heard upon the intervening petition of the Adams Express Company, the answers thereto and the evidence was argued by counsel and submitted to the court; upon consideration whereof the court finds that there is due to said the Adams Express Company, upon the receiver's certificates mentioned in the said intervening petition, the sum of $53,058.04, with interest from this date, and that for the payment thereof said Adams Express Company has a first and prior lien upon the property involved in this suit, which, under the stipulation of the parties herein, has been transferred to the proceeds of sale of said railway heretofore made. It is therefore ordered, adjudged, and decreed that there be paid to said Adams Express Company, out of the proceeds of said sale, said sum of $53,058.04, with interest from this date, and also its costs."

The Kanawha & Ohio Railway Company was a corporation of Ohio and West Virginia. The mortgage foreclosed below covered all its property and franchises of every character. The bonds issued by the company, and secured by the mortgage, amounted to $1,160,000. They contained on their face a stipulation that the stockholders of the Kanawha & Ohio Railway Company

were released from any liability on their stock beyond the paid-up capital of the company. The road sold for $505,000. The mortgage debt was more than double that amount.

Thomas Thacher and Stevenson Burke, for appellant.

Ramsey, Maxwell & Ramsey, (Lawrence Maxwell, Jr., of counsel,) for appellee.

Before JACKSON and TAFT, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, (after stating the facts as above.) Two questions are presented for our consideration. The first one arises on the motion to dismiss, and the second on the merits.

First. It is argued that the decree of the circuit court, appealed from, affected equally the Kanawha & Ohio Railway Company and the Mercantile Trust Company, and that therefore, in order to give this court jurisdiction of the appeal, both the trust company and the railway company should have been made appellants, or some proceedings in the nature of a summons and severance against the railway company should have been had in the court below. We are of opinion that the circumstances of this case and the character of the decree entitled the trust company to bring this appeal alone. By the decree of foreclosure and sale, and the decree of confirmation, the Kanawha & Ohio Railway Company, which was the defendant below, was deprived of everything it had except its franchise to be a corporation. For all practical purposes it became defunct. Under the decree of confirmation in the court below, its property had passed from it to the purchaser free of all liens and claims, and the proceeds of sale, which amounted to not more than half of the bonded debt due the complainant, became the property of the complainant. To these proceeds, by stipulation of all the parties, the lien, if any, which the Adams Express Company had, was transferred. The only shadow of an interest which it can be contended that the Kanawha & Ohio Railway has in a reversal of the order of the circuit court in favor of the Adams Express Company is that, if it is reversed, the unpaid indebtedness on the bonds of the railway company will be reduced by the amount ordered paid to the Adams Express Company. As the Kanawha & Ohio Railway Company is a defunct corporation, with no means with which to pay its debts and no franchises to exercise, the amount of its indebtedness, which it never can pay, and never will pay, is wholly immaterial. If its stockholders were liable for the unpaid portion of the mortgage debt to an amount equal to their capital stock, as provided by the Ohio statute and constitution, there might be some ground for saying that the Kanawha & Ohio Railway Company had an appreciable interest in the decree, requiring its presence in the appeal proceeding or a severance. But the contract in the bonds expressly waives such liability. The complainant did not seek to obtain a judgment for the unpaid balance on the bonds against the company; doubtless, for the very good reason that the foreclosure and sale under the mortgage would de-

prive the company of all means and power to pay another dollar upon the claim. After the sale for less than the face of the mortgage the railway company became a mere nominal party to the suit, with no interest whatever in the distribution of the proceeds. After the confirmation of the sale, the only controversy remaining was between the complainant and the Adams Express Company, because the order only affected the proceeds, and, in any possible aspect of the case, they were the only parties entitled to share therein.

The sale was confirmed on the 7th day of April, 1890. Thereafter stipulations with reference to evidence were entered into, to which only the Adams Express Company and the complainant were parties. The court below proceeded as if the railway company had no interest in the proceeds, and we think that in this the court was right. This constituted a substantial severance of the interests of the railway company and the trust company. It would be yielding to the merest technicality to hold, under such circumstances, that the omission of a nominal and useless party from the appeal proceedings should deprive the real party in interest of its right to have the question re-examined on its merits by the appellate court.

But how as to the authorities? Undoubtedly, the general rule is that all parties named as defendant, where the decree is a joint one in favor of the complainant, must join in the appeal. Owings v. Kincannon, 7 Pet. 399; Mussina v. Cavazos, 6 Wall. 355; Masterson v. Herndon, 10 Wall. 416; Hardee v. Wilson, 146 U. S. 179, 13 Sup. Ct. Rep. 39. But this rule is not inexorable. In Forgay v. Conrad, 6 How. 201, a bill was filed by an assignee of a bankrupt against the bankrupt and three other defendants to set aside three several deeds to each as fraudulent. The deeds were set aside by decree of the court below, and one of the alleged fraudulent grantees took an appeal. A motion to dismiss was made on the ground that the other three defendants below were not joined. The motion to dismiss was overruled. The supreme court, speaking by Chief Justice Taney, said:

"The appeal is taken by Samuel A. Forgay and Ann Fogarty, otherwise called Ann Wells, and they alone are interested in that portion of the decree last above mentioned. The bankrupt and the three other defendants have not appealed. These three defendants claimed other property, which had been conveyed to them at different times and by separate conveyances, as mentioned in the proceedings, and it was not, therefore, necessary that they should join in this appeal."

The railway company in the present action would seem to have no more real interest in the appeal from the order in favor of the Adams Express Company than the bankrupt in the case of Forgay v. Conrad had in appealing from the decree in that case.

In Brewster v. Wakefield, 22 How. 118, the bill was to foreclose a mortgage, and subsequent lienholders were made parties. A decree of foreclosure was entered. The mortgagor alone appealed from the amount of the judgment rendered against him on the mortgage debt. It was held that it was not necessary to make the lien claimants parties to the appeal. Chief Justice Taney said:

"Nor was it necessary that the parties who acquired liens on the mortgaged premises subsequent to the mortgage in question should join in the appeal. They were not necessary parties to a proceeding in equity to foreclose the mortgage, and none of them have appeared to the suit to contest the claim of Wakefield. And if it had been otherwise, yet the question in controversy here is the amount due from the appellant; and in the case of Forgay v. Conrad, 6 How. 201, this court decided that a defendant in equity, whose interest is separate from the other defendants, may appeal without them."

And yet it is very evident that the other lienholders were very substantially interested with the mortgagor in reducing the amount due from the mortgagor to the mortgagee, because such a reduction would necessarily give them a better chance of collecting their claims out of the mortgaged property.

In Germain v. Mason, 12 Wall. 259, suit was brought by Mason and others to recover judgment for work and material furnished, and for the establishment of a mechanic's lien prior to those of a number of other lien claimants, made parties defendant. Judgment was rendered against Germain for the amount claimed, and it was decreed to be a lien prior to all the rest. It was held that Germain might appeal alone from this decree without bringing in the other lien claimants, although it established the debt of Mason as a paramount lien on the real estate as to all the other defendants. It is very clear in this case that the interest of the other lien claimants to have the judgment in favor of Mason against Germain set aside was substantial, and that it affected the security of the other liens.

In Railroad Co. v. Johnson, 15 Wall. 8, a mortgagee filed a bill for foreclosure against his mortgagor, and against certain trustees who held shares of stock as collateral security for the same debt, praying for the foreclosure of the land mortgaged, and the sale of it and the stock. The decree was against the mortgagor for foreclosure, and against the trustees for sale of the collateral. The mortgagor sued out a writ of error. It was held that the trustees were not necessary parties to the writ.

In Milner v. Meek, 95 U. S. 252, an assignee in bankruptcy brought suit in equity to sell land of the bankrupt, and to secure an adjustment of the liens upon the land against all the lien claimants and the general creditors. The decree determined the amount and priority of the several liens. It was held that one lien claimant who was defeated might appeal without making the other lien claimants parties to the appeal.

In Hanrick v. Patrick, 119 U. S. 156, 7 Sup. Ct. Rep. 147, a plaintiff brought trespass to try title against one defendant. The other defendants were made parties on their own motion, according to the Texas practice, and claimed title to the land through the plaintiff, and adverse to both the plaintiff and the defendant. It was held that it was not necessary for the three defendants to join in a writ of error, because their interests were distinct. Mr. Justice Matthews says, (page 164, 119 U. S., and page 151, 7 Sup. Ct. Rep.:)

"In equity, where interventions pro interesse suo have been permitted to those affected by the proceedings, but not parties to the original contro-

versy, or where the original parties have distinct and separable interests, the same general rule applies to appeals as to joint decrees; but it has always been held that, where the decree is final and separate or separable, those not affected by it are not necessary parties to the appeal. Forgay v. Conrad, 6 How. 201."

We think it quite clear from the foregoing authorities that the railway company, considering its defunct condition, had no such interest in reversing the decree in favor of the Adams Express Company as to make it a necessary party to the appeal. It certainly had no direct interest in the proceeds, and the indirect interest—that of reducing its indebtedness—was as immaterial as if the road had passed through bankruptcy. The order was not made against the railroad company, but was made against the proceeds which belonged to the trust company. By the decree of foreclosure and sale, the railway company was deprived of all interest in the subject-matter which the order in favor of the Adams Express Company affected, namely, the proceeds of sale. It is well settled that a party to a decree or order who has parted with all his interest in the subject-matter thereof, and cannot be injured by such decree, cannot appeal from the decree. Kelly v. Israel, 11 Paige, 147; Mills v. Hoag, 7 Paige, 18.

Much reliance is placed on the case of Hardee v. Wilson, ubi supra. The original action in that case was by the complainant against a debtor who had conveyed real estate of his own to himself, in trust for his wife, and had thereafter conveyed the same land to one Hardee, with the purpose, as charged, of hindering, delaying, and defrauding his creditors. The decree below declared that the conveyance of the debtor in trust to himself for his wife was fraudulent, because made for the purpose alleged, and that the subsequent conveyance to Hardee was in reality a mere security for a debt. Hardee appealed. It was held that he should have joined with him the debtor and his wife. The decree of the court below obviously was to the disadvantage of the debtor and his wife. They had, therefore, an appealable interest in reversing it, though it may be difficult to see why their interest was not so separable from that of Hardee that he might, under previous decisions of the supreme court, have appealed alone. However this may be, the case at bar seems to us clearly distinguishable from the Hardee Case, in the two respects already mentioned: First, the course of the proceedings below showed a substantial severance and ousting from the controversy of the railway company; secondly, there was an absence of interest in the railway company to reverse the decree as a whole, or any part of it.

An examination of the cases in the supreme court (and there are many of them) where, on the question of the distribution of the proceeds, the foreclosing complainant has appealed from a decree in favor of an intervening claimant, shows that the supreme court has not regarded it as necessary to join in the appeal the defunct corporation, whose life was substantially ended by the confirmation of the sale in foreclosure. Thus, in Fosdick v. Schall, 99 U. S. 235,

the original action was by trustees against a railway company to foreclose the mortgage and sell the entire property, franchises, and rights of the company. The question which the court had to consider in that case was whether certain rolling stock belonged to the mortgagor company so that it was covered by the mortgage, or whether it belonged to an intervening claimant, who alleged that, under the contract by which the company acquired the use of the rolling stock, the title still remained in him. The court below held that the vendor of the rolling stock still held the title in himself; that he was entitled to rent out of the proceeds of the sale of the mortgaged property. From this decree the complainants, representing the bondholders who would be entitled to the proceeds, appealed. The defendant railway company did not appeal. The appeal was considered on its merits. It is said the case is not authority, because the question of jurisdiction was not raised. It is, however, the well-known custom and disposition of the supreme court to make an independent examination of the record in every case for jurisdictional defects, and the fact that the question was not made by counsel by no means establishes that it was not considered by the court. The presumption is otherwise with respect to such a question. See, also, Farmers' Loan & Trust Co., Petitioner, 129 U. S. 206, 9 Sup. Ct. Rep. 265.

Second. We come now to the merits of the order in favor of the Adams Express Company. It is well established in the federal courts, by numerous decisions of the supreme court of the United States, that a court of equity which, in foreclosure or other suit, has taken into its custody railroad property, may authorize its receivers to borrow money for the preservation, maintenance, or necessary betterment of the road, and may, by its order, make the loans thus incurred a paramount lien on the income and corpus. Wallace v. Loomis, 97 U. S. 146; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. Rep. 809. The court does not act as the agent for the parties in the sense that it creates the lien by contract of the parties with the lenders, but, by virtue of its custody of the property and its jurisdiction of the parties, it pledges its own faith to the lender that it will enforce such a lien against the property and the parties as a condition of its releasing the property, and of its enforcing any equities in favor of any of those who invoke its assistance. Now, it may enforce the lien in one of two ways: It may directly order out of the proceeds of sale the prior payment of the loans, or it may impose a continuing lien on the property by providing in its decree for sale that the purchaser shall take it subject to such a lien. If the latter method is followed, then a lien is established by contract with the purchaser in favor of the lender, which, appearing in the chain of title by which the purchaser holds, is attached to the property in the hands of all subsequent grantees of the purchaser, and may, of course, be enforced by the lender in an independent action. Swann v. Clark, 110 U. S. 602, 4 Sup. Ct. Rep. 241. But the court may order the sale of the property free of all liens, in which case the purchaser takes a title freed from the burden,

as well of receiver's loans as of mortgage debts, and the pledge of the court that the receiver's debts shall constitute a paramount lien can only be fulfilled by the court in its distribution of the proceeds of sale. It is very clear from the record of the proceedings of the district court of West Virginia in the first foreclosure suit against this railroad that the final order and decree of that court was intended to and did vest in the purchasers a title free of all liens for receiver's debts. There was a deed of release expressly declaring and effectuating this intention. This was inconsistent with the order making the receiver's certificates, to be issued, a paramount lien on the road, and pro tanto it set that order aside, and transferred the lien, if any, to the proceeds of the sale.

But it is contended, and it was so held by the learned court below, that the permission given to the purchasing committee to pay part of the purchase money in bonds which were themselves subsequent in priority of lien to receiver's debts prevented the purchasers from taking as bona fide purchasers of the property for cash, without notice. The argument is that, as the bonds represented a lien inferior to the receiver's debts, the substitution of the property for them in the hands of the bondholders preserved the prior lien of the receiver's debts in the property in spite of the terms of the release, because the deposit of the bonds was only a constructive payment. Vilas v. Page, 106 N. Y. 439, 13 N. E. Rep. 743. The purchasers were permitted to deposit bonds in payment of the purchase price after paying into court sufficient cash to extinguish all costs and liens prior to the bonds, as adjudicated by the court; the bonds to be taken as equivalent to the cash which, if the price had been paid in money, their holders would have received on distribution. This was precisely the same as if the purchasers had paid the whole price in money, and had then withdrawn, on distribution, their pro rata share of the proceeds. Their rights cannot be different because they did not go through this useless formality. The railroad property, to the extent that it was paid for by bonds, was, in the hands of the purchasing bondholders, proceeds of sale. The real question here is, therefore, whether the holder of receiver's certificates could follow the proceeds of the sale into the hands of bondholders receiving the same on distribution by final decree of the court, because that court had failed to redeem its pledge to make the receiver's debts a paramount lien by providing on distribution for their payment. If the holder of receiver's certificates were in court at the time of the entry of the decree of distribution, protesting against and excepting to the same, it seems perfectly manifest that his only recourse would be by appeal from the decree, and, on a failure to appeal, the decree would finally cut off his rights. The controversy would then have become res judicata. He would be thereby estopped in any subsequent independent action to recover against the bondholders his equitable share of the proceeds of the sale. Does the Adams Express Company, as a holder of receiver's certificates, stand in any better position than if it had been present by counsel in court when the final decrees of confirmation,

release, and distribution were entered, objecting to the same? It is very clear that it does not. When the Adams Express Company received from Sharp the evidences of indebtedness on which it now relies for its lien, it was informed, by what was written thereon, that Sharp was a receiver acting under order of the district court of West Virginia, and having custody for the court of the Ohio Central Railroad, of which the court had taken possession in a case then pending before it, and that the lien assured to the express company on the face of the certificates was dependent on an order and adjudication of that court.

The doctrine of lis pendens would charge any one, who purchased this railroad, or acquired an interest in it, pending the litigation, with notice of the litigation, and would subject the property in his hands to the final action of the court, without his being brought into court as a party. If this be true of one acquiring an interest by deed, conveyance, or mortgage, a fortiori must it be true of one whose interest is acquired, and has its existence, only by virtue of the litigation.

The express company was put upon inquiry, then, as to all that had been done in that litigation, and was charged with notice of all the subsequent proceedings therein, much as if it had been a party to the record. It is said that the company had the right to await notice from the receiver before presenting its claims. We do not think so. If it relied on the receiver, it was a personal trust, in which it has been deceived, and must bear the loss. It was its plain duty at an early day to advise the court of its claim against the receiver and the railroad. Inquiry would have shown it that the order authorizing the issue of these certificates was made ex parte. It was charged with notice, therefore, that by final action of the court the validity or security of the certificates might be prejudically affected. Said Mr. Justice Blatchford, speaking for the supreme court in Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434-456, 6 Sup. Ct. Rep. 809:

"The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court in regard to the loans. The court always retains control of the matter, its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments."

For three years the company made no demand of any kind. This was laches of the grossest character, and entitles it to no consideration in a court of equity. Meantime an officer of the court had been especially authorized by decree of the court to investigate and report on the receiver's debts, and a final decree had been entered, adjudicating, in effect, that there were certain valid debts, not including that of the express company, and no others, and ordering confirmation and distribution. This is a final decree, unappealed from and unreversed. It estops the express company, as an alleged creditor of the receiver in the first foreclosure sale, from seeking payment of its claims against either the purchasers or the distributees in that suit.

The case of Vilas v. Page, 106 N. Y. 439, 13 N. E. Rep. 743, which the court below relied on, is in our opinion quite distinguishable from the case at bar, because in that case, by the decree and by express agreement between the parties to the foreclosure suit, a lien was secured to the holder of the receiver's certificates, upon the property mortgaged, and the title of the vendees was made subject to the claim of the holder of the receiver's certificates, if any should be finally adjudged.

The decree in favor of the Adams Express Company is reversed, with instructions to dismiss its intervening petition.