## UNITED STATES v. JOINT TRAFFIC ASS'N.

### (Circuit Court, S. D. New York. May 28, 1896.)

1. **RAILROADS—JOINT TRAFFIC ASSOCIATIONS—INTERSTATE COMMERCE LAW.**

    A combination of railroad companies into joint traffic associations, under articles of agreement by which each road carries the freight it may get, over its own line, at its own rates, and has the earnings to itself, though providing proportional rates, or proportional division of traffic, is not a pooling of traffic on freights, or division of net proceeds of earnings, within the prohibitions of the interstate commerce law, nor of the act of 1890 (26 Stat. 209) against unlawful restraints and monopolies.

2. **SAME—JURISDICTION OF FEDERAL COURTS.**

    The United States cannot maintain a bill in equity to restrain an association of railroads from carrying into effect an agreement alleged to be illegal under the interstate commerce law, when it appears that it did not grant the charter of, and has no proprietary interest in, any of the roads. Its right is to prosecute for breaches of the law, not to provide remedies.

This was a bill in equity, filed by the United States against the Joint Traffic Association to enjoin alleged violations of the interstate commerce law.

Wallace Macfarlane, U. S. Atty.

James C. Carter and Edward J. Phelps (George F. Edmunds, on brief), for defendants.

WHEELER, District Judge. The interstate commerce law (24 Stat. 379) provides:

"Sec. 5. That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any contract, agreement, or combination with any other common carrier or carriers for the pooling of freights of different and competing railroads, or to divide between them the aggregate or net proceeds of the earnings of such railroads, or any portion thereof; and in any

case of an agreement for the pooling of freights as aforesaid, each day of its continuance shall be deemed a separate offence."

The act of 1890 against unlawful restraints and monopolies (26 Stat. 209) provides:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy in restrain of trade or commerce among the several states, or with foreign nations is hereby declared illegal."

The 32 railroad companies defendants, immensely engaged in competitive interstate commerce, have made an arrangement forming this Joint Traffic Association, with a board of nine managers, consisting of one each from the Baltimore & Ohio, Chesapeake & Ohio, Erie, Grand Trunk, Lackawanna, Lehigh Valley, Pennsylvania, Vanderbilt, and Wabash systems; and with jurisdiction over competitive traffic which passes to, from, or through the western termini of the trunk lines, viz. Toronto, Can., Suspension Bridge, Niagara Falls, Tonawanda, Black Rock, Buffalo, East Buffalo, Buffalo Junction, Dunkirk and Salamanca, N. Y.; Erie, Pittsburgh, and Allegheny, Pa.; Bellaire, O; Wheeling, Parkersburg, Charleston, and Kenova, W. Va.; and Ashland, Ky.; and such other points as may hereafter be designated by the managers as such termini. The arrangement provides as to rates, fares, charges, and rules (article 7):

"Section 1. The duly-published schedules of rates, fares, and charges, and the rules applicable thereto, now in force, and authorized by the companies parties hereto, upon the traffic covered by this agreement (and filed with the interstate commerce commission as to such of said traffic as is interstate), are hereby reaffirmed by the companies composing the association; and the companies parties hereto shall, within ten days after this agreement becomes effective, file with the managers copies of all such schedules of rates, fares, and charges, and the rules applicable thereto.

"Sec. 2. The managers shall, from time to time, recommend such changes in said rates, fares, charges, and rules as may be reasonable and just, and necessary for governing the traffic covered by this agreement, and for protecting the interests of the parties hereto therein, and the failure to observe such recommendations by any party hereto as and when made shall be deemed a violation of this agreement. No company party hereto shall, through any of its officers or agents, deviate from or change the rates, fares, charges, or rules herein reaffirmed or so recommended by the managers, except by a resolution of its board. The action of such board shall not affect the rates, fares, charges, or rules disapproved, except to the extent of its interest therein over its own road. A copy of the resolution of the board of any company party hereto authorizing any such change shall be immediately forwarded by the company making the same to the managers, and such change shall not become effective until thirty days after the receipt of such resolution by the managers. The managers, upon receiving such notice, shall act promptly upon the same for the protection of the parties hereto.

"Sec. 3. The powers conferred upon the managers shall be so construed and exercised as not to permit violation of the interstate commerce act or any other law applicable to the premises, or any provision of the charters or the laws applicable to any of the companies parties hereto; and the managers shall co-operate with the interstate commerce commission to secure stability and uniformity in the rates, fares, charges, and rules established hereunder."

It also provides, as to competitive traffic (article 8):

"The managers are charged with the duty of securing to each company party hereto equitable proportions of the competitive traffic covered by this agreement so far as can be legally done; and the control of all persons acting as contracting and soliciting freight and passenger agents in relation to

the traffic covered with due regard to the relative interests involved, and the number of such persons to be employed, is given to the managers."

This bill is brought at the request of the interstate commerce commission, under the direction of the attorney general, by the district attorney of the United States for this district, against this agreement, as made, without counting upon any statutes, or alleging anything actually done under it to be of itself unlawful otherwise than because so done. The answer denies, as a conclusion, any illegality within or under the agreement; and, as a matter of fact, anything unlawful outside of or beyond it. The case has been heard upon the bill and answer, and so is made to turn upon the question of the legality or illegality of the contract, and upon the right of the United States, as plaintiff, to maintain this suit, if it is illegal. The provisions of the contract stated are understood to be the ones challenged as being contrary to the statutes quoted.

The restraint and monopoly act expressly authorizes such a proceeding in equity as this to prevent its violation, and this suit is well maintained if this contract is within it. Railroads are not expressly named in this act, and are said in argument not to be within its terms. No one is so named; but it applies to all contracts and combinations in restraint of trade or commerce among the states. Railroads do not trade among the states, but they carry for those who do; and what would restrain their so carrying would seem to be a restraint of such commerce.

These provisions of the contract do not provide for lessening the number of carriers; nor their facilities; nor for raising their rates, except expressly by its terms not contrary to law, and therefore not beyond what are reasonable. The interstate commerce law (section 1) requires all rates to be reasonable, and the making of reasonable and lawful rates upon carriage in any traffic cannot be any restraint in law upon such traffic. U. S. v. Trans-Missouri Freight Ass'n, 53 Fed. 440; Id., 7 C. C. A. 15, 58 Fed. 58. The soliciting of custom is no part of the duty of common carriers, and dispensing with soliciting agents, or with the control of them, cannot be illegal, nor an agreement to do so be an illegal contract. As this case rests wholly upon the contract as made, and not upon anything actually done under color of or beyond it, and each road is left by it to carry on its own business within lawful limits as before, no unlawful restraint of commerce seems to be provided for by it; and no ground for relief under that statute of 1890 is made out.

No provision is made by the interstate commerce law for enforcing its provisions in equity, except to carry out orders of the commission; and authority for this suit to restrain any violation of that law must appear otherwise, or fail. That governments and states exercising general municipal control over the people, their property, their rights and their convenience, may, by their law officers, maintain suits in equity to restrain actual nuisances to ways, parks, commons, and the like, which are injurious to the common rights of all to their enjoyment, is not to be questioned. The United States government is limited in such control to such particular subjects as are committed to it, which include, of course, interstate and foreign commerce, car-

rying the mails, and such. These railroads are not federal instruments, although they may be, and probably are, engaged in the business of, and are within control of the laws of, the government to some extent. As so engaged, no nuisance would be federal till it should become actual by obstructing these functions. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900. This contract, if illegal, is intangible, and is not alleged or claimed to have obstructed the roads for government purposes in any manner whatever.

The United States may maintain a bill in equity to repeal a patent for land (U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850), or a patent for an invention (U. S. v. American Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90); and a state to protect its interest in components of the soil under its navigable waters (Coosaw Min. Co. v. South Carolina, 144 U. S. 550, 12 Sup. Ct. 689), or to prevent abuse of charters granted by it (Attorney General v. Railroad Companies, 35 Wis. 524), because of the interest in the property as proprietor, or in the grant as a party to it. But here the United States are not alleged, or understood, to have granted the charters of, or to have any proprietary interest in, any of these railroads; or to have any other concern about them in any respect involved here, but to have its prohibitory statutes for regulating commerce between the states respected and obeyed, the same as those against counterfeiting, or tampering with the mails, should be. Breaches of such statutes are misdemeanors punishable by indictment or information, and that merely such are not preventable in equity is elementary. A plaintiff in equity for relief by injunction should have some right or interest in the subject of prevention, or be given express authority to proceed in that way by statute. Authority is given to the interstate commerce commission to have proceedings for the enforcement of that law taken and prosecuted, but that is understood to refer to the usual and appropriate proceedings in such cases, and seems not to authorize any that were unknown before. The right given here to that commission is to prosecute rights, but not to provide remedies. If this is erroneous, only such agreements are prohibited as are for the pooling of freights, or dividing aggregate or net proceeds of earnings. So far as this agreement goes, each road carries the freights it may get, over its own line, at its own rates, however fixed, and has the proceeds, net or other, of the earnings to itself. Very able judicial opinions and learned commentaries and disquisitions upon pooling, too numerous for separate notice herein, have been referred to, but none make it include what is left in wholly separate channels. Provision for reasonable, although equal or proportional, rates for each carrier, or for a just and proportional rate for each carrier, or for a just and proportional division of traffic among carriers, does not seem to be either a pooling of their traffic or freights, or a division of the net proceeds of their earnings, in any sense.

This statement of reasons seems quite inadequate to the very full and able argument upon which this case has on each side been presented, but these conclusions have been reached upon full consideration of all, so far as understood; and, as they appear to be sufficient for the disposition of the case, no more is attempted. Bill dismissed.