THIRD STREET & SUBURBAN RY. CO. v. LEWIS.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1897.)

MORTGAGES—PURCHASE OF MORTGAGED PREMISES BY RAILROAD COMPANY—RECEIVER'S CERTIFICATES—PRIORITIES—FORECLOSURE.

In 1884 the W. Co. mortgaged to L. certain city lots. In 1891 it sold them, subject to the mortgage, to a railway company, which proceeded to erect a power house upon them, and put them to railroad uses. Subsequently, in a suit brought against the railway company, a receiver was appointed, who operated the railroad under the orders of the court, and, to pay operating expenses, issued receiver's certificates, also under an order of the court, which made such certificates a first lien on the company's property. Upon the request of the certificate holders, the railway company's property, including the lots, was sold, and the proceeds applied to the payment of the certificates. L. was not a party to this suit, but had actual knowledge of the proceedings. During his operation of the railroad, the receiver paid taxes on the property and interest on L.'s mortgage. Before the order for the sale of the railway company's property, L. commenced a suit for the foreclosure of his mortgage. *Held*, that the lien of L.'s mortgage was not extinguished by the proceedings in the suit against the railway company, nor subordinated to the lien of the receiver's certificates, but that his right to foreclosure of his mortgage was unimpaired. Union Trust Co. v. Illinois Midland R. Co., 6 Sup. Ct. 809, 117 U. S. 434, distinguished.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Frederick Bausman, for appellant.

Morris B. Sachs, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The appellee was the complainant in a suit brought to foreclose a mortgage on certain real property in the city of Seattle. His supplemental bill alleged, in substance, that on May 14, 1884, the Western Mill Company, a corporation, executed its promissory note to the complainant in the sum of $20,000, payable three years after date, with interest at 9 per cent. per annum, and to secure the same executed its mortgage on certain lots in the city of Seattle; that the interest on said note and mortgage has been paid to December 14, 1893, but not thereafter; that on October 14, 1891, the mortgagor sold and conveyed the said mortgaged premises to the Ranier Power & Railway Company, a corporation, and that on or about February 13, 1895, in a cause pending in the circuit court of the United States for the district of Washington, in which A. P. Fuller was complainant and the Ranier Power & Railway Company was defendant, the master in chancery of said court executed and delivered to A. M. Brookes, Angus McIntosh, and Frederick Bausman, who were the purchasers of said lots at a sale had to satisfy the decree rendered in said cause, a deed of sale to said mortgaged premises, and that on February 12, 1895, the said McIntosh, Brookes, and Bausman conveyed the same unto the Third Street & Suburban Railway Company; that the interest of said

last-named corporation is subject to the lien of the mortgage. To this bill the Third Street & Suburban Railway Company, the appellant, made answer, alleging that the Ranier Power & Railway Company, immediately after receiving its conveyance of said lots from the mortgagor, applied the said property to railway uses, and erected thereon a power house for its railway; that on June 13, 1893, the assets of said Ranier Power & Railway Company passed into the hands of Manson F. Bacchus, receiver in the suit of Fuller against said company, mentioned in the bill; that said receiver, under the order of the court, operated the railway properties and power house, and on August 8, 1894, under the order of the court, issued receiver's certificates upon all the property of said railway company, including the lands described in the bill; that the certificates were by the court adjudged to be necessary, and essential to the continued existence of the railway company, and were made upon the petition of the receiver, showing that the operating expenses of the company exceeded its gross receipts, and that, unless money were raised by means of these certificates, the property would have to be abandoned; and that the order of court made the certificates a first lien upon all property in the receiver's hands, including the mortgaged premises; that subsequently the certificate holders petitioned the court to enforce the lien, and that thereupon, under the order of the court, all the property in the receiver's hands was sold on January 28, 1895, as alleged in the bill; that the sale was thereafter confirmed, and on February 12, 1895, the purchasers conveyed the same to the Third Street & Suburban Railway Company. The answer further alleges that the Ranier Power & Railway Company was a corporation, organized with railway powers, and owned public franchises for railway purposes; that the complainant did not seek to foreclose his mortgage at the time of the transfer of the land to said corporation, but forbore to do so for more than two years following, during which period the mortgage was overdue, but that he accepted interest on the loan from said railway company, and thereafter accepted interest from the receiver; that the receiver, before the foreclosure suit was begun, paid taxes and insurance upon the lands to the amount of $3,000; that, while the complainant was not a party to the suit in which the receiver's certificates were issued, he had knowledge of that suit and of the receivership, and accepted interest from the receiver, with knowledge of the litigation, and of all the facts alleged in the answer, and during the space of eleven months forbore to foreclose his mortgage, and permitted the receiver, with the trust funds, to protect the mortgaged property; that about three months before the issuance of the receiver's certificates he caused his appearance to be entered in said cause, for the purpose of obtaining leave to sue the receiver, but did not ask to be made a party to the cause, nor did he serve notice of his appearance upon any of the parties; that the sale under the receiver's certificates was known to the complainant both before and after its date, but he has not sought to disturb it, or filed objection thereto. A demurrer to the amended answer was sustained by the circuit court, and, the defendant answering no further, a decree of

foreclosure was thereupon entered. The order sustaining the demurrer is assigned as error on the appeal to this court.

It is contended by the appellant that by virtue of the facts set forth in its amended answer the complainant's mortgage lien has been extinguished, and that the appellant holds its property under the title acquired at the judicial sale, which was made to satisfy the receiver's certificates, free from all prior incumbrances. It is not contended that the lien of the complainant's mortgage has been adjudged to be second to that of the receiver's certificates upon a hearing had to determine the respective rights and priorities of those incumbrances, nor that the complainant has had his day in court, but it is urged that the actual knowledge which the complainant had of the proceedings of the court, the issuance of the certificates. the adjudication of their necessity and of their priority, is tantamount to legal notice or service of process upon him. To sustain this view of the law, we are referred to the decision of the supreme court in Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 434, 6 Sup. Ct. 809, in which it is said: "A full opportunity, as in this case, to be heard on evidence as to the propriety of the expenditures and of making them a first-class lien, is judicially equivalent to prior notice. The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court in regard to the loans. The court always retains control of the matter. Its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments." This expression of opinion was uttered in the case of a foreclosure of railroad mortgages, in which the court had had occasion to advert to the nature of that class of liens, and the necessity for preserving the road as a going concern, together with its franchises, not only for the benefit of the corporators, but as a public highway, and had said that its creditors, or the holders of its obligations, must necessarily be held to have received the same in view of these peculiar facts, and with the understanding that, if the company fall into insolvency, and its affairs come into a court of equity for adjustment, it may become necessary to make repairs, or pay the costs of operation, and for that purpose to borrow money upon the credit, not only of its earnings. but of its corpus. The court held, it is true, that the certificates of receivers might, in case of urgency, where legal notice was not practicable, be issued under the order of the court for the preservation of the property and the protection of the bondholders, and that in such a case prior notice to incumbrancers or to all the parties interested was not absolutely necessary, but that the question of the priority of such receivers' certificates over the liens of persons to whom notice was not given, or who did not consent, might be subsequently adjudicated, and that the takers of such receivers' certificates must be expected to receive the same subject to such contingency. But the facts upon which the decision was rendered in that case differ in substantial features from the present case. The complainant here did not lend his money upon railroad security. He loaned it upon lots in a city, which were subsequently sold to a

street-railway company subject to his lien, and by the latter were used as the site of a power house. The fact that he failed to foreclose his mortgage immediately on such transfer, or that he received from the railway corporation, or from the receiver appointed subsequently in a suit against said corporation, the interest which came due upon his mortgage. does not in any way change his rights, or estop him to enforce his lien as an ordinary mortgage upon real estate. Assuming it to be true that he had actual notice of all the steps taken in the suit in which the receiver's certificates were issued, and that he made no appearance in said court, and no opposition to said proceedings, he is not thereby precluded from proceeding to foreclose his mortgage upon default of the interest on the same. The foreclosure suit was begun some two months before the hearing on the petition for the order to sell the real estate to satisfy the receiver's certificates. The holders of those certificates and the parties to that suit had the opportunity to cause the complainant to intervene in said proceedings, and submit to the court the question of the priority of his lien. They declined to do so. They were chargeable with the record notice of his lien from the first, and the complainant, in view of their conduct, might justly assume that it was not their intention to dispute his prior lien, or to attempt to create a lien in advance thereof, and that in selling the property as the same was sold, in a proceeding to which he was not made a defendant, it was the intention to recognize his mortgage and to sell the property subject thereto. In making the expense of operating a railroad a charge upon it in preference to the mortgage liens, courts of equity have acted with extreme caution, and have exercised the extraordinary power only upon the theory that the holder of such a mortgage lien takes the same subject to the implied condition that, in case of the insolvency of the railroad company, it may become necessary, under a receivership, to borrow money for the purpose of preserving its value and protecting its franchises for the benefit of all interested therein. The power has generally been exercised only after notice to all parties to the litigation; and if, without such notice, or if before the time when the prior lien holders become parties to the suit, receivers' certificates are issued by authority of the court, such prior lien holders, when they are subsequently brought before the court, will always be given the opportunity to contest the priority of the receivers' certificates over their liens. In Mercantile Trust Co. v. Kanawha & O. Ry. Co., 7 C. C. A. 3, 58 Fed. 6, it was held that the holder of a receiver's certificate is put upon inquiry as to all that has been done in the litigation in which the certificate was authorized, and that he is charged with notice of all subsequent proceedings therein, and of the fact that by the final action of the court the validity of the certificate may be prejudicially affected; and that a final decree in a foreclosure suit against a railway company, vesting the purchasers at the foreclosure sale with a title free from all liens for receiver's debts, operates to set aside so much of a previous order as has made the receiver's certificates a paramount lien on the road. But the mortgagee in this case does not stand in the attitude of the ordinary

lender of money upon railroad security. His loan was made upon real estate only, and not in contemplation of its subsequent application to railroad uses. Upon what principle of equity can it be said that his mortgage has become subordinated to the uses for which the property was thereafter devoted, so that it has lost its character of a mortgage upon real estate, and has now, by virtue of the insolvency of the railway company, become extinguished by a lien created by a receiver for the purpose of maintaining other property of the company? At the time when the mortgage loan was made. the security presumably was, and still is, of sufficient value to satisfy the complainant's lien. For the protection of that lien, he has not, so far as the facts are disclosed in the pleadings, required the intervention of a court of equity, nor is it shown that any expense has been incurred by the receiver which was necessary or advantageous to the protection of his security.

The appellant insists that there is ground for the equitable preferment of the receiver's certificates over the complainant's lien, in the fact that the receiver, before the commencement of this foreclosure suit, paid out of the assets of said railway company, for insurance and taxes on the mortgaged property, the sum of $3,000, thereby reducing the assets of the company, and in part creating the necessity for the issuance of the certificates. We are unable to see how this contention can be sustained. If the receiver paid taxes and insurance, it was in the discharge of his duty, and in the course of business, and for the purpose of protecting the property as it was, and possibly for the purpose of averting a suit by the complainant to foreclose his mortgage. The greater portion of the sum so paid is evidently on account of the improvements placed upon the property by the railway company, and not for taxes upon the lots which were the subject of the complainant's mortgage. If the taxes had remained unpaid, they would now be an additional charge upon the real estate, and the complainant, in his decree of foreclosure, would be entitled to have that amount also paid out of the security. The mortgage contemplated this, and it is not shown that the value of the property is inadequate to meet such increased charge upon it. In any view of the facts alleged in the amended answer, they constitute no defense to the bill, and the demurrer was properly sustained. The decree will be confirmed, with costs to the appellee.