# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## LOUISVILLE, N. A. & C. RY. CO. et al. v. POPE.

### (Circuit Court of Appeals, Seventh Circuit. May 4, 1896.)

### No. 263.

1. PRACTICE ON APPEAL—SEPARATE APPEALS—JOINT OR SEVERAL DECREE.

One P., as receiver of the S. R. Co., filed a bill against the C. & I. Ry. Co., the L. Ry. Co., the I. & D. Ry. Co., S., as trustee, and H., and alleged that the S. R. Co. was entitled to a lien for certain sums due it for the construction of the road of the I. & C. Co.; that that company wrongfully obtained possession of the partially constructed road, mortgaged it to S., trustee, to secure bonds, which were used to complete the construction; that the contractors to whom the bonds were issued transferred most of them to the C. & I. Co., which procured a foreclosure, without the knowledge or consent of S., trustee, under which the road passed to the C. & I. Co., and afterwards to the L. Co. S., trustee, filed an answer and cross bill, denying knowledge of the alleged fraudulent practices or of the foreclosure, and claiming certain rights and relief in behalf of the holders of certain outstanding bonds. A master, to whom the cause was referred, found the equities to be in favor of the complainant. S., as trustee, filed exceptions to the report for its failure to award him the relief he sought, but not for its finding a lien in complainant superior to his rights. H. was a formal party, having no interest in the controversy, and did not appear or answer. A decree was made, declaring a lien in favor of complainant on a part of the road in question, superior to the rights of the I. & D. Co., the C. & I. Co., or the L. Co., and requiring the L. Co. to pay a sum of money to the complainant within 60 days, in default of which the complainant might apply to the court for a further order. No assignment of errors was filed by S., trustee, but the three railway companies filed a petition for an appeal, with an assignment of errors, and thereupon an order was made, without notice to S. or H., giving the railway company leave to appeal, without joining the other defendants, with the same effect as if a severance had been asked and allowed. *Held* that, although, if the decree were joint, a separate appeal could not be allowed without notice, the decree rendered was so far separate, as between the railway companies and S., trustee, as to authorize a separate appeal by the former, without joining the latter, and without proceedings for severance, while H. was not a necessary party to the appeal.

2. SAME—SUPERSEDEAS—AMOUNT OF BOND.

The appeal so taken was allowed to operate as a supersedeas, upon the appellants' giving a bond for $10,000, though the amount required to be

paid by the L. Ry. Co. to the complainant was over $300,000. *Held*, that the decree, since it declared a lien in favor of complainant on a part of the railroad, was not within the provision of paragraph 1 of rule 13 of the circuit court of appeals (11 C. C. A. ciii., 47 Fed. vi.), corresponding to rule 29 of the supreme court (3 Sup. Ct. xvi.), which provides that upon supersedeas the indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of such judgment or decree, and that the amount of the bond was within the discretion of the circuit court.

8. SAME—CERTIFICATION TO SUPREME COURT.

A party to an appeal to the circuit court of appeals cannot be permitted, in advance of the argument thereof, to move to have certain questions claimed to arise on the appeal, and to be of sufficient intricacy and importance, certified to the supreme court for its opinion, such certification being for the instruction of the circuit court of appeals, and wholly within its discretion.

Appeal from the Circuit Court of the United States for the District of Indiana.

G. W. Kretzinger, Henry W. Blodgett, A. C. Harris, and E. C. Field, for appellants.

John S. Miller, for appellee.

Before JENKINS and SHOWALTER, Circuit Judges, and SEAMAN, District Judge.

JENKINS, Circuit Judge. Three motions with respect to this cause are presented for the judgment of the court, which will be considered in their order.

1. The appellee moves to dismiss the appeal, and objects to the jurisdiction of the court to entertain or consider the appeal upon the merits, upon the ground that the decree appealed from was a joint decree against the Chicago & Indianapolis Air-Line Railway Company, the Louisville, New Albany & Chicago Railway Company, the Indianapolis, Delphi & Chicago Railroad Company, Erastus W. Hubbard, and Morris Sharp, trustee; that it was taken without joining Hubbard, and Sharp, trustee, and that no proceedings for severance were had. The bill filed by the complainant below (appellee here) sought to recover certain railway property through two contracts between the South Atlantic Railroad Company and the Indianapolis, Delphi & Chicago Railroad Company, dated, respectively, September 5, 1873, and February 3, 1875, and by reason of work done by the South Atlantic Railroad Company in fulfillment of such contracts, and in the construction of the railway in question. The Louisville, New Albany & Chicago Railway Company and the Chicago & Indianapolis Air-Line Railway Company acquired the property through the Indianapolis, Delphi & Chicago Railroad Company, which latter company is claimed to have wrongfully obtained possession of the partially constructed railroad and property in question, and to have completed the railway under a contract between it and Yeoman, Hegler & Co., dated January 1, 1878, and to have executed a trust deed thereon to Sharp, trustee, securing its bonds to the amount of $247,000, which were delivered to Yeoman, Hegler & Co. for work done in the construction of the railway. That construction contract, and $224,000 of the mortgage bonds and the cap-

ital stock of the Delphi Company, which was under their control, were transferred by the firm of Yeoman, Hegler & Co. or their successor in interest to the Chicago & Indianapolis Air-Line Company. This latter company, it is said, procured a foreclosure of that trust deed in the name of Sharp, trustee, but without his knowledge or consent obtained the usual decree July 24, 1880, and sold the railway, under which the title passed, as is claimed, to the Chicago & Indianapolis Air-Line Railway Company, and thereafter to the Louisville, New Albany & Chicago Railway Company. It appears that, in addition to the $224,000 of the mortgage bonds so transferred to the Chicago & Indianapolis Air-Line Railway Company, certain others of the remaining $23,000 of bonds were turned in and paid by the Chicago & Indianapolis Air-Line Railway Company upon the sale in the course of the foreclosure proceedings, but that some few of the bonds—how many is left uncertain—are still outstanding. Sharp, trustee, by his answer to the bill, asserted ignorance of the alleged fraudulent practices set forth in the bill, denied knowledge of the foreclosure suit until a time subsequent thereto, asserted title under the trust deed, and by his cross bill prayed that the foreclosure proceedings might be declared null and of no effect, and that he be placed in possession of the property of the Indianapolis, Delphi & Chicago Railroad Company, but did not seek a foreclosure. The master's report found the equities to be in favor of the complainant, Pope, touching the allegations of his bill. Sharp, trustee, filed exceptions to that report to this effect: That the master should have found that the foreclosure of the trust deed to him was filed without his authority, and that the proceedings thereunder were coram non judice and void as against himself and the holders of bonds secured by the trust deed and not held by Yeoman, Hegler & Co. or their successor or successors; that the various railway companies acquired their rights with full notice and knowledge of the rights and equities of Sharp, trustee, and of those bondholders not participating in the transactions which resulted in the transfer of the property to the Louisville, New Albany & Chicago Railway Company, and should have found that under the circumstances the Louisville, New Albany & Chicago Railway Company and the Chicago & Indianapolis Air-Line Railway Company became trustees as to the property acquired by them under the foreclosure proceedings and contract specified, and should be held to pay the amount paid by certain stockholders of the Indianapolis, Delphi & Chicago Railway Company not participating in the proceedings, and should also be held to pay the amount due upon two of the bonds for $500 each, said to be outstanding, and to be held respectively by one Meeker and one McReynolds; and that the master erred in concluding that his cross bill was defective, and that no good purpose could be served by prosecuting the same. But no exception was filed by him to the conclusion of the master that the amount found due the complainant should constitute a lien upon the property superior to the lien of Sharp, trustee. Erastus W. Hubbard was charged by the bill as the purchaser at the alleged collusive foreclosure sale, and asserts that he was either a member of the firm of Yeoman, Hegler & Co.,

or was interested with them, and was an officer and director of the Indianapolis, Delphi & Chicago Railroad Company, and had possession of the $247,000 of bonds as trustee, to hold, under the contract between that firm and the Chicago & Indianapolis Air-Line Railway Company, until that company should pay 60 per cent. of the face value of the bonds. It seems by the record that Hubbard neither appeared to the suit nor answered therein. The decree found in favor of the complainant below (appellee here) that the value of the property of the Chicago & South Atlantic Railroad Company taken and appropriated by the Chicago & Indianapolis Air-Line Railway Company and the Louisville, New Albany & Chicago Railway Company unlawfully and without right was the sum of $168,922.88; that sum, with interest at the rate of 6 per cent. per annum from March 4, 1881, is decreed to be a charge and lien in favor of Pope, receiver, upon so much of the line of railroad now used and operated by the Louisville, New Albany & Chicago Railway Company as part of its line of railway as lies between the city of Delphi and the town of Dyer, in the state of Indiana, and such lien was declared to be a valid and first lien upon the property, and prior and superior to the right of the said defendants, and each and every of them, and the rights, title, claims, equity, or interest of the said defendants, and each and every of them, and of all and every person claiming under them since the filing of the bill. It is then decreed that the Louisville, New Albany & Chicago Railway Company within 60 days pay to Pope, receiver, the sum of $311,887.95, being the sum previously mentioned, with interest computed thereon, with the costs incurred in the cause; and that, if such payment be made, Pope, receiver, should execute a release to the Louisville, New Albany & Chicago Railway Company of all his interest as receiver in the property of that company, and in default in the payment of the sum within the time specified, the complainant have leave to apply to the court for further order for the carrying into effect of the decree. It was further provided that the defendants to the cause, and all persons claiming under them since the filing of the original bill of complaint, be forever barred and foreclosed from asserting any title, interest, or equity adverse to the lien of the complainant, Pope, as receiver, as therein adjudged and decreed. No assignment of errors appears to have been filed by Morris Sharp, trustee.

On the 26th of April, 1895, the following proceedings were had before the Honorable William A. Woods, Circuit Judge:

"And now come the defendants, the Louisville, New Albany & Chicago Railway Company, the Chicago & Indianapolis Air-Line Railroad Company, and the Indianapolis, Delphi & Chicago Railroad Company, and present to the court their petition for an appeal from this court to the United States circuit court of appeals for the Seventh circuit, said petition being accompanied by assignment of errors as required by the rules of said court, and show to the court that notice thereof was duly served on said plaintiff on April 25, 1895."

After reciting the petition of appeal and the assignment of errors, the order proceeds:

"And it appearing to the court that the final decree from which this appeal is prayed ran against the defendants above named, to wit, the Louisville,

New Albany & Chicago Railway Company, the Chicago & Indianapolis Air-Line Railway Company, and the Indianapolis, Delphi & Chicago Railway Company, and the property of the said Louisville, New Albany & Chicago Railway Company, it is therefore ordered that said defendant above named have leave to appeal without joining the other defendants in said appeal, with the same effect as if the severance had been petitioned and allowed."

The order then allows the appeal "to said defendants above named" to operate as a supersedeas upon giving a bond in a specified amount. It does not appear from the record that Morris Sharp, trustee, or Erastus W. Hubbard, were in any way notified of this petition, or that they, or either of them, were in any way asked to join in the appeal, or that they, or either of them, refused to join therein. Without doubt all parties to a joint decree in equity must joint in an appeal, unless upon notice the court grants a separate appeal to a single party. Hardee v. Wilson, 146 U. S. 179, 13 Sup. Ct. 39; Beardsley v. Railway Co., 158 U. S. 123, 15 Sup. Ct. 786. But if the decree be several in form or in substance, and the interest represented by each defendant be separate and distinct from that of the other, any party may appeal to protect his own interest. Gilfillan v. McKee, 159 U. S. 303, 312, 16 Sup. Ct. 6. The reason of the rule is stated to be: First, that the successful party may be at liberty to proceed to enforce his decree against those not desiring a review; and, second, that the appellate tribunal shall not be required to decide a second or third time the same question in the same record. The precise question here is substantially this: whether a decree establishing a lien upon real property is to be deemed joint or several as between a mortgagor and a mortgagee of the property, so that either may appeal from the decree without joining or without severing as to them. In Brewster v. Wakefield, 22 How. 118, a bill was filed to foreclose a mortgage upon real property, to which subsequent lienors were made parties. There was no defense by the appellant, the mortgagor, but by his appeal he presented a question with respect to the rate of interest that the debt should draw after its maturity. The defendants who held subsequent liens upon the premises were not parties to the appeal, but there was no severance as to them. The court held, by Mr. Chief Justice Taney, that the subsequent lienors were not necessary parties to the proceeding, and had not appeared to contest the claim of the complainant; and that, had it been otherwise, the question in controversy was the amount of the debt due from the appellant, and upon the authority of Forgay v. Conrad, 6 How. 201, held that the decree was separate, because the interest of the appellant was separate from that of the other defendants. In Germain v. Mason, 12 Wall. 259, the suit was brought to recover for work and materials furnished to a building and for the establishment of a mechanic's lien thereon prior to other lien claimants who were made parties defendant. The court ruled that Germain, the owner, might appeal alone without the presence of the other lien claimants, notwithstanding that the debt of the complainant was decreed to be a paramount lien on the realty as against all the other defendants. So, also, in Milner v. Meek, 95 U. S. 252, suit was brought by an assignee in bankruptcy to sell the land of the bankrupt, and for the adjustment of the liens

upon the land against all lien claimants and general creditors. The decree determined the amount and priority of the several liens. . It was held that one lien claimant might appeal without the presence of the other. The question is discussed in a well-considered opinion by the court of appeals of the Sixth circuit in the case of the Mercantile Trust Co. v. Adams Exp. Co., 16 U. S. App. 37, 69, 7 C. C. A. 3, and 58 Fed. 6, in which the authorities are assembled and reviewed.

Here the decree established a lien upon the railway in question, and adjudged that all rights of the Louisville, New Albany & Chicago Railway Company and of Morris Sharp, trustee, were subordinate to that lien. It does not provide for any enforcement of the lien established in case of failure of the railway company to pay the amount decreed, but reserves the right to the complainant in case of nonpayment within a specified time to apply to the court for further direction. It appears that the short line of railway involved had become incorporated into the through line of railway of the Louisville, New Albany & Chicago Railway Company between Chicago and Louisville. Whether, upon default in compliance with the decree, the court would direct a sale of the railway, or would take it into possession and sequester the revenues to the satisfaction of the decree, had not been determined by the court below prior to the appeal. So that, whether in fact Sharp, as trustee under the trust deed, was injuriously affected by the decree, would depend upon the nature of the ultimate proceedings to secure satisfaction of the decree. If such should be obtained through sequestration of the revenues of the road, and without sale of it, the trustee would not be injuriously affected. It may also be said that it is clear upon the record that Sharp, as trustee, did not contest the complainant's right, but contented himself with asserting the trust deed against the appellant, who held nearly all of the bonds, and in favor, as he states, of all but two bondholders. The decree is in substance one against the railway company, establishes the claim due, and that in default of its payment the lien granted would be enforced against the property upon which the trust deed existed, and in some way to be thereafter determined. The case seems to be clearly within the rulings in Brewster v. Wakefield and Germain v. Mason. Sharp, the trustee, in no way excepted to the master's report or to the decree so far as it determined the rights of the complainant below. Any appeal by him to review the decree in favor of the complainant would necessarily prove abortive. To join him, therefore, as an appellant would be useless, and the formality of severance would seem to be unnecessary. We think this decree to be so far separate that an appeal was authorized without the joining of Sharp, trustee, as a party thereto, and without proceedings for severance. With respect to the defendant Hubbard it is only needful to say that the trust in him would seem to have been fully performed, and all interests of which he was trustee vested in the present appellants. He has no possible interest in the controversy, and did not appear to or defend against the suit. He is not a necessary party to the appeal. The motion to dismiss will therefore be denied.

2. The appellee moves the court that the supersedeas bond given by the Louisville, New Albany & Chicago Railway Company, the appellant, be held insufficient, and that the appellant be required, within a time to be specified, to file a sufficient bond, and that in default thereof the supersedeas be set aside. The circuit judge who granted the order allowed the appeal to operate as a supersedeas upon giving a bond in the penal sum of $10,000. Paragraph 1 of rule 13 (11 C. C. A. ciii., 47 Fed. vi.) which corresponds with rule 29 of the supreme court (3 Sup. Ct. xvi.), provides as follows:

(1) Supersedeas bonds in the circuit and district courts must be taken with good and sufficient security, that the plaintiff in error or appellant shall prosecute his writ or appeal to effect, and answer all damages and costs if he fail to make his plea good. Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including just damages for delay, and costs and interest on the appeal; but in all suits where the property in controversy necessarily follows the suit, as in real actions and replevin, and in suits on mortgages, or where the property is in the custody of the marshal under admiralty process, or where the proceeds thereof, or a bond for the value thereof, is in the custody of the court, indemnity in all such cases will be required only in an amount sufficient to secure the sum recovered for the use and detention of the property, and the costs of the suit and just damages for delay and costs and interest on the appeal.

The rule was enacted to regulate the mode of carrying into effect the provisions of Rev. St. § 1000, which is as follows:

"Sec. 1000. Every justice or judge signing a citation on any writ of error, shall, except in cases brought up by the United States or by direction of any department of the government, take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, shall answer by damages and costs where the writ is a supersedeas and stays execution, or the costs only where it is not a supersedeas as aforesaid."

Section 1012 provides that appeals shall be subject to the same rules and regulations as are prescribed in law in cases of writs of error. The purpose of the statute and the object of the rule were, in the event of an appeal or writ of error, that the appellee or defendant in error should, by reason of the stay of proceedings demanded by his opponent, be fully indemnified for all damages and costs sustained thereby if the appeal or writ of error should prove ineffectual; in other words, that he should sustain no loss in consequence of any ineffectual effort to reverse the decree or judgment by reason of his hand being stayed pending such effort. It was not, however, designed to give one a better security than he had by the decree or judgment. It was indemnity, not guaranty of payment, that was sought for; indemnity for the delay, not additional security for the debt. The rule contemplates three classes of cases requiring different character of indemnity: First, where the decree or judgment is for money not otherwise secured; second, where the property in controversy necessarily follows the suit, as in real actions and replevin and in suits or mortgages; third, where the property is in the custody of a marshal under admiralty process, or where the proceeds thereof, or a bond for the value thereof, is in the custody of the court. In the first class of cases the indemnity was required to be for the whole amount of the decree or judgment, including the

just damages for delay and costs and interest on the appeal. In the second and third classes indemnity is required only in an amount sufficient to secure the sum recovered for the use and detention of the property, and the costs of the suit, and just damages for delay, and costs and interest on the appeal. The contention here is, on the one hand, that the decree is for the recovery of money "not otherwise secured," and, on the other hand, that it is a suit "where the property in controversy necessarily follows the suit." The bill was filed to recover certain sums of money expended in the construction of the railway; to set aside as fraudulent certain transactions by which the Chicago & South Atlantic Railroad Company was divested of its title to the property and its title was vested in the Louisville, New Albany, & Chicago Railway Company, and to establish a lien thereon for the amount found due. The decree adjudges in conformity with the claim. Whether the case falls within the first or second class depends upon the reference of the word "otherwise" to the word "indemnity" or to the words "judgment or decree"; whether the rule should be read, "Such indemnity, where the judgment or decree is for money not otherwise secured than by the indemnity, must be for the whole amount," etc.; or whether it should be read, "Such indemnity, where the judgment or decree is for the recovery of money not otherwise secured than by the judgment or decree;" and it may not be denied that, grammatically speaking, the argument for either construction is forceful. But we think that the manifest purpose of the statute and of the rule is best effected by referring the word "otherwise" to the words "such indemnity." Such construction would give a reading that the decree or judgment referred to was one for the recovery of money only. Such rendering would correspond with the provisions of the statutes of the various states where the practice is regulated under codes of procedure. It is true that in such case the appellee or defendant in error succeeding in the appellate court might have a better security than by the decree or judgment. But that results because it is not practicable for the courts, in allowing an appeal or writ of error, to enter into an investigation to ascertain upon what property the decree or judgment might operate, embracing questions of disputed ownership unrecorded conveyances, and prior liens. It was necessary, therefore, where the decree or judgment was for the recovery of money only, that the judgment creditor, in consideration that he was prevented from enforcing his rights pending the appeal or writ of error, and because such enforced delay might wholly prevent satisfaction of his claim, should have as indemnity the absolute covenant to pay the debt if the appeal or writ of error should prove ineffectual. But, on the other hand, where the money due is, by the contract, as in the case of a mortgage, or by the decree or judgment, or by statute, imposed as a lien upon specific real estate, if the appeal or writ of error prove ineffectual the party has the same security, unimpaired, with indemnity for damages caused by the delay. It may be said that the second class refers to actions in rem, or actions analogous thereto, where the possession of particular real or personal property is sought, and where by the decree, the specific property in contro-

versy, real or personal, is remanded to the possession of the successful party. That may be so, but not wholly so. The second class provides for the case where the property in controversy necessarily follows the suit, not only as in actions in rem, but also as in suits on mortgages. It is urged that this expression includes only cases where the lien is granted by contract independently of the decree or judgment. We do not understand that a lien on land imposed by contract is of any greater sanctity or of more binding efficacy than that imposed by the solemn adjudication of a court; and it may be added that a mortgage is merged in the decree of foreclosure. We are therefore of opinion that in analogy to the case of mortgages the second class comprehends all cases where the lien is imposed upon land, whether by decree, by contract, or by statute. A different conclusion was arrived at by Judge Deady in the Holladay Case, 28 Fed. 117, but we are unable to concur in his opinion. The rendering which we give the rule effectuates the purpose of the statute, and without impairment of the rights of the successful party to the decree or judgment. The opposite construction would impose unnecessary, and in some cases prohibitory, restriction upon the right of a party to a review of an adverse decree or judgment, and give to the judgment creditor not only indemnity against the damages sustained by the appeal or writ of error, but a better security for his debt than that afforded by the decree or judgment.

We are not asked to, nor are there any circumstances presented which would authorize us to, review the discretion of the circuit judge in granting the order complained of. The motion urged upon us proceeds upon the ground that he acted in a case where, under the rule, there was no room for the exercise of discretion. This contention being erroneous, the motion must be overruled.

3. The appellant moves the court, because of certain supposed grave and important questions of law involving the jurisdiction of the trial court as well as the merits of the case, to certify to the supreme court for its advice 16 questions presented by the motion, which may be classified as follows: First, whether, upon the face of the record, by reason of the allegation of citizenship, the court below had jurisdiction to entertain the suit; second, whether in the suits in which Pope was appointed receiver of the Chicago & South Atlantic Railroad Company, by reason of the allegation of citizenship of the parties, there was jurisdiction to entertain those suits; third, whether the decrees of those courts can be collaterally attacked; fourth, whether the case made by the record falls within the recognized jurisdiction of a court of equity; fifth, whether the trial court, by reason of the absence from the record of certain alleged indispensable parties, was without jurisdiction to make the decree appealed from, and whether certain contracts between the Indianapolis, Delphi & Chicago Railroad Company and the Chicago & South Atlantic Railroad Company were ultra vires. We cannot entertain the proposition that parties to a suit may present such a motion to this court as of right. The act creating the circuit courts of appeals provides that the court may certify any questions concerning which it desires the instruction of that court for its proper decision. Whether a

question should be certified rests within the discretion of the court, but it is not a discretion the exercise of which may be invoked by a party as of right. The certification is for the instruction of the court upon doubtful questions; and while in cases of magnitude and upon intricate and doubtful questions of law the court upon the argument may perhaps properly indulge the suggestion of counsel of the desirability of the advice and instruction of the supreme court, we are compelled to say that this formal motion is not conformable to correct practice. It cannot be tolerated that the argument of a cause may be thus split up into sections. If the suggestion of counsel may be entertained that a question in the cause should for any reason be certified, the suggestion must come at the argument of the case upon its merits, when the court can be fully advised whether the questions involved are so intricate and doubtful and essential to be resolved that the instruction of the supreme court is necessary or desirable. If the present motion were entertained, it would furnish a precedent for a practice that would seriously interfere with the proper dispatch of the business of the court. It may be that upon the argument of the cause upon its merits some question may be raised which, upon consultation, the judges may deem proper to certify. We shall reserve the right and discretion so to do if and when we deem it needful to the proper determination of the cause. We must decline at this time to entertain the motion, or to recognize the right of a party to challenge our judgment upon the propriety of so doing in advance of the argument of the cause upon its merits. The motion to certify certain questions to the supreme court is overruled