State, ex rel. John Haberlan, appellee, v. Don L. Love, Mayor, et al., Appellants.

Filed March 13, 1914.    No. 17,892.

Municipal Corporations: Firemen's Pension: Period of Service: Evidence. The relator, John Haberlan, began a mandamus proceeding in the district court for Lancaster county against Don L. Love, mayor of the city of Lincoln, and others, to be placed upon the retired list of firemen under section 1, ch. 39, laws 1895. It is contended by the respondents that the relator must have served 21 years' continuous service in the department; second, that the service must be in a paid fire department; third, that the relator must have elected to retire from active service; fourth, that he must have retired with an honorable discharge. *Held*: (a) That the section does not require continuous service, and that the period of 21 years may include the full time which the applicant has served the city; (b) that under the facts shown the service of the applicant was in a paid fire department of the city for more than 22 years; (c) that the evidence shows that

the applicant. elected to retire from active service; (d) that when
he retired he was entitled to an honorable discharge, and that
his name should be placed upon the retired list of firemen on a
pension.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE. *Affirmed, except as to money
award.*

*Fred C. Foster* and *D. H. McClenahan,* for appellants.

*W. C. Frampton* and *Price & Abbott, contra.*

HAMER, J.

This is an appeal in a mandamus proceeding brought in
the district court for Lancaster county by John Haberlan
against Don L. Love, mayor of the city of Lincoln, and
others, to be placed upon the retired list of firemen on a
pension. He bases his claim upon section 11, ch. 30, Comp.
St. 1901, which reads: "That all metropolitan cities and cit-
ies of the first class having a paid fire department, shall
pension all firemen of the paid fire department, whenever
such fireman shall have first served in such fire department
for the period of twenty-one years, and shall elect to retire
from active service and go upon the retired list. Such pen-
sion shall be paid by the city in the same manner as firemen
upon the active list are paid, and such pension shall be
twenty-five per cent. of the amount of salary such retiring
fireman shall be receiving at the time that he goes upon
such pension list." Judgment was rendered for the rela-
tor. The appellants contend that Haberlan must have
served 21 years *continuous* service in the department; sec-
ond, that the service must be in a *paid* fire department;
third, that he must have *elected* to retire from active
service; fourth, that he must have retired with an *honor-
able* discharge, and not under a cloud for misconduct.

It seems to be admitted by the appellants that the relator
served 19 years, 3 months and 18 days. It is stated in a
summary of the evidence that he *began work* April 29,
1876, and that he resigned December 29, 1881, making 5
years and 8 months employment at that time; that August

13, 1888, he began his first employment for the city in a *paid* fire department, and that he resigned February 15, 1890, making the time of his *first* employment in the *paid fire department* 1 year, 6 months and 2 days; that he again commenced work in the paid fire department February 15, 1892, that he was discharged from said department March 31, 1904, making the time of his second employment in the paid fire department 12 years, 1 month and 16 days. The brief of appellants contends that the legislature intended that the service should be a *continuous* period, and not several periods of service totaled together. The construction contended for seems artificial and unreasonable. The language is not 21 years of "continuous" service. The section merely provided that the service should be in the "fire department for the period of twenty-one years." The period is not described as uninterrupted or continuous. It may have been intended to mean duration of time only. We are not aware of any gain to the public by making the period of service continuous. If the legislature had intended to make the service continuous, it could easily have used the word "continuous" or some other word of like import to convey its meaning.

In *People v. French,* 46 Hun (N. Y.) 232, it was held under a police pension statute that service could not be continuous, but was based upon a statute which permitted terms of service to be added together, and the court in construing that statute held that it did not intend 21 years continuous service. The statute contained the following provision: "In determining the terms of service of any member of the police force, service in the late municipal and metropolitan force, and subsequently in the police force of the city of New York shall be counted and held to be service in the police force of the city of New York, for all purposes of this chapter." In that case the court held that that part of the statute above quoted disclosed the intention of the law to be that, where a portion of the service had been rendered as a member of the metropolitan force, *continuous* service for 20 years was not required, but that

the use of the words "terms of service" meant that the time could be made up by adding the terms together.

In *Continental Hose Co. v. City of Fargo,* 17 N. Dak. 5, six members of the fire department were given sole charge of the fire apparatus used by the city; the other members of the department were required to repair to the fire and aid in extinguishing it, and were to be paid so much per hour in the daytime and so much more per hour in the nighttime. Held, That such fire department "was a paid department." It was the effort of the defense in that case to show that the firemen were "volunteer" firemen. This is an instructive case, because it quotes liberally from encyclopedias and dictionaries, contains considerable research, and discriminates and distinguishes in a clear and logical way.

In *In re Becker,* 80 N. Y. Supp. 1115, the "testator gave to each employee who at the time of his decease had been employed 'as long as two years and less than five years' $500, and to each one who had been employed 'for less than two years' $100, held, that one who, before the testator's death, had been employed continuously for only 16 months, but who had, counting his various terms of service, been employed for four years in all, was entitled to $500." In that case it was said in the body of the opinion: "While there is little from which the intent of the testator can be drawn upon this subject, yet it is evident that the desire of the testator was to recognize the persons who were in his employ at the time of his death, and to make the recognition depend upon the length of their services. That being the case, it seems to me that it is immaterial whether it was continuous or not, as, if the testator had had in mind an intention to restrict its provisions to persons who had been in his employ continuously no doubt he would have indicated it by the use of the word 'continuous.' "

It is contended by the respondents that the Nebraska statute does not permit totaling terms of service. To this it may be said that the Nebraska statute does not provide for "continuous" service. That seems enough to dispose

of this question, without reference to the authorities cited, which are clearly in favor of the relator.

It is said by respondents that the statute requires the appellee to serve for 21 years "in a paid fire department, and not in a volunteer organization." It is then said that the city of Lincoln did not have a paid fire department until in January, 1886. There seems to be some dispute on the part of the respondents as to whether Haberlan served the city on the fire department during the years 1885, 1886 and 1887, and up to August 13, 1888, and from February 15, 1890, to February 15, 1892. Haberlan testified that he was away three years, beginning on the 29th of December, 1881; that he came back from Minnesota and was at Holdrege six months, making three years and six months from December 29, 1881, ending in June, 1885. Haberlan testified that he then went upon the Lincoln fire department in June, 1885. It is the contention that he did not go to work for the city until August 13, 1888, making three years in dispute. Haberlan contends that he was in the employ of the city as engineer on the fire department during 1885, 1886, 1887 and 1888. In corroboration of his testimony, Mr. Byers testified that Burr was mayor during 1885 and 1886, and that he (Byers) was street commissioner under Burr's administration, and that he wrote to Haberlan at the request of Mr. Burr, the mayor, to come back and take charge of the engine, and that Haberlan did come back and take charge of the engine, during Burr's administration. As to 1887 and 1888, A. J. Sawyer was the mayor. Haberlan testified that he was with the fire department as engineer during Sawyer's administration. His testimony is corroborated by the testimony of Mr. Sawyer, and Byers testified to substantially the same facts. Haberlan testified that he was in the fire department until March 31, 1904, excepting from December 29, 1881, to June, 1885.

Robert Malone's testimony shows that, when the hook and ladder company was taken from the volunteers and put in the paid fire department in 1886, they organized themselves and made rules governing the hook and ladder com-

95 Neb. 37

pany, and that at that time there seems to have been no record kept by the hook and ladder department; that there was nobody to relieve him when he went to his meals or was absent from the house; that the records kept were very uncertain; that no effort was made to keep track of who was on the fire department or when anybody was appointed or discharged.

M. B. Reese, the present chief justice of the Nebraska supreme court, testified on behalf of the relator that during the time he was practicing law he had searched the records of the city of Lincoln as to whether the records showed that Mr. Haberlan was a member of the fire department for a certain length of time. He testified: "I found that Mr. Haberlan was, for a time, a member of the fire department, as shown by the records. I went into the records for a number of days and searched among them, and searched everything that seemed to me to throw any light upon the subject. Then, for I don't know how many years, apparently there was a complete blank of any record, and absence of any record on the subject of the fire department, except that at certain periods some person who had apparently bought up the claims would present a bill and it would be allowed to him as assignee of claims against certain departments, but there was nothing showing who was the assignor, or who had rendered the service, or anything of that kind. That is my recollection. For a number of years, I don't remember how many, that was the case." Judge Reese was asked if he examined any records in the office of the fire department, and testified that he did; that "the fire chief gave me what records he had, and I took them with me to the clerk's office, and went into the old papers and files covered with dust and looked them all through just as thoroughly as I could. I might state, if I am allowed, that I presented this claim as attorney for Mr. Haberlan, and for a long time failed to get the committee to act upon the claim. * * * Finally, I saw some of the members of the committee individually, and they requested me to investigate the subject and report, and to that extent I was acting, not only for my client, but for the city, and that

caused me to go through the records as I did, with the re-
sults as I have already stated." He was asked if in examin-
ing the records he could find any place that showed that
John Haberlan had served 21 years for the city. "A. Yes,
sir; at the commencement, and later on; but during three
years there was not any record as to who had been members
of the fire department, the only record being that there was
an assignee of claims against the department presented.   I
think Mr. Brock." He was then asked if Mr. Brock used
to buy them up, and answered : "Yes, sir; so I came to the
conclusion that those claims had been bought up and al-
lowed to him as assignee of the claims without stating who
the persons were who rendered the service. With that ex-
ception the record was a complete blank." Further along
Judge Reese testified: "I can remember what I did not
find.   I found the record to be in the condition which I
have stated.   Mr. Haberlan had been a member; and I
think I found where he had been appointed, and claims al-
lowed as salary—allowed for a length of time—and then I
found the record was a complete blank, except as I have
stated. I cannot remember just what the records in the
chief's office showed." Judge Reese made a report to the
mayor and city council.   His report is included in the bill
of exceptions and is referred to in his testimony.   In the
report he says, in substance, that the records have been
very poorly kept; that many have been lost or destroyed;
that it is impossible to say who the firemen were at all times
or how they were paid; that he examined the warrant reg-
ister from May 5, 1890, to December 1, 1891; that it is
shown that during that time warrants were issued on the
fire fund for salaries to firemen to the amount of nearly
$30,000; that nearly all were issued to N. C. Brock for
"claims assigned" without further indication as to who
were the original owners of such claims; that the investi-
gation shows that Mr. Haberlan was a member of the force
during those years; that he was appointed on the 29th day
of April, 1876, at a salary of $75 a month; that this was 28
years before the disabling of his engine in 1904; that from
the date of his appointment he served continuously until

March, 1890, with the exception of three years; that the printed report of Fire Chief Newbury, issued in 1888, shows, at page 13, that Mr. Haberlan was the engineer of engine No. 4; that the printed report of Fire Chief Malone, issued in 1884, shows, at page 52, that Haberlan was then on the force, having been appointed September 1, 1888; that he resigned April 15, 1890; that he was reappointed February 15, 1892; that in Mr. Reese's report it was said to be certified by Fire Chief Clement that Mr. Haberlan was on the force continuously from the 5th day of February, 1892, until April 1, 1904, making the time nearly 25 years of service; that about two years of this time he was not in actual paid service, but always responded to calls when needed; that, deducting this time from the 25 years, it leaves about 23 years of actual paid service. Judge Reese's report closes: "I have aimed in this to be on the safe side, and think there is no doubt at all but that he has served more than 21 years in the regular paid fire department of the city. This entitles him to be retired under the provisions of section 11 of chapter 30 of the Compiled Statutes and pensioned at the rate of $20 per month, which would be equal to one fourth or 25 per cent. of the salary he was drawing at the time his engine failed." The witness was cross-examined by Mr. Foster for the respondent.

While the evidence is not very clear because proper records were not kept, the best evidence of which the subject is capable tends to establish the fact that Mr. Haberlan was a member of the *paid fire department* of the city of Lincoln for something more than 21 years. In any event the relator seems to have faithfully served the city *for more than 24 years*. If the two years about which there is a dispute, being the time elapsing between the 15th day of November, 1890, and the 15th day of November, 1892, shall be deducted, the time left is 22 years he was in a paid fire department in any event.

In *United States v. Belew*, 24 Fed. Cas. 1079, the question submitted was whether a carrier of mail was "a person employed in any of the departments of the general post-office." The court said: "The business belonging to the

post office, is in a department of the post office; a person employed in that business, is a person employed in a department of the post office. If, then, the carrying of the mail be a part of the business of the post office, it would seem that the person who carries it, is a person employed in a department of the general post office." It is further said: "He (counsel for the prisoner) insists that he must be an officer. But this is not the object of the law; the terms of the enactment do not require an officer; they are satisfied with an agent, or any person employed in any of the departments, or, in other words, in the business allotted to the general post office." The conviction was sustained. The cases of *People v. French, supra,* and *In re Becker, supra,* are both applicable to this part of the case.

Did Haberlan retire? Haberlan resigned. His resignation was an *election to retire,* and the Standard Dictionary defines "retire" "to withdraw from active service, * * * as an officer of the army or navy. * * * To separate or withdraw." In *State v. Mayor and City Council,* 4 Neb. 260, this court say: "In the absence of some statutory provision, we know of no rule which requires such resignation to be accepted by the municipal authorities, to make it effective. Their refusal, even, to accept it, would not have the effect to compel him to retain the office against his will." In *United States v. Wright,* 1 *McLean* (U. S.) 509, it is said: "There can be no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office." Haberlan testified that, except during the time he had been off duty, which he explained, he had been in the service of the city as a paid fireman "ever since 1872. I never volunteered a day. * * * I have been in the service for the city 24 years and 6 months." At the end of that time, he says, "I just quit." There is no evidence tending to show a dishonorable discharge or anything that reflected on his conduct. He is entitled to the reward which the law provides for a faithful servant.

It is proper that those who risk their health and their lives to protect the property of their neighbors should be

rewarded in old age by a pension, which possibly may save them from actual want or serious distress. We see no objection to the granting of a pension in such a case as that presented by the facts considered. We are unable to see that the judgment of the district court is wrong. We find much in this case to sustain it. The judgment of the district court properly granted a peremptory writ of mandamus, but improperly awarded a money judgment.

The judgment granting the writ is affirmed, but the money judgment is set aside; appellants to pay all costs.

JUDGMENT ACCORDINGLY.

FAWCETT and SEDGWICK, JJ., concur in conclusion.

REESE, C. J., not sitting.