VIRGIL SCHAEFFER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM G. PICKREL, AND MARGARET B. PICKREL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOWELL P. RIEGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109894, 109895, 109901.   Promulgated September 22, 1942.

*Edward M. Woolf, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The respondent determined deficiencies as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Virgil Schaeffer | 109894 | 1938<br>1939 | $461.36<br>153.12 |
| William G. Pickrel and Margaret B. Pickrel | 109895 | 1938<br>1939 | 373.50<br>246.67 |
| Lowell P. Rieger | 109901 | 1938<br>1939 | 888.31<br>563.22 |

For the year 1937 the respondent determined an overassessment of $86.56 in the case of William G. Pickrel and Margaret B. Pickrel, but the Board has no jurisdiction over overassessments. *Cornelius Cotton Mills*, 4 B. T. A. 255.

The cases were submitted on separate stipulations of facts, which are adopted as findings of fact as to each petitioner. The sole question is whether the profit realized from dividends received on certain "certificates of claim" against an insolvent bank, purchased by peti-

tioners at less than par value, is ordinary income or capital gain under section 117 (f) of the Revenue Act of 1938.[1]  Respondent held it to be ordinary income.  Petitioners contend that it is capital gain.

The petitioners filed their income tax returns for the years involved with the collector of internal revenue for the first district of Ohio.

Briefly the facts are:

The Union Trust Co. of Dayton, Ohio, a state bank chartered under the laws of Ohio, was closed October 31, 1931, and taken over for liquidation by the Superintendent of Banks of Ohio.  The bank had approximately $28,000,000 in deposits and some 90,000 depositors. All accounts known as "school children accounts" were paid off in full immediately after closing.  Likewise, all preferred and all secured creditors of the bank were paid off shortly thereafter.  All persons who were indebted to the bank and had deposits therein were given credits against their debts by the way of set-off and their accounts closed.  By April 1932 all of the above adjustments had been completed and negotiable certificates of claim were issued to all remaining depositors of the bank, approximately 50,000 in number, and amounting to more than $15,000,000 in money.

The bank, with the approval of the superintendent of banks, permitted the liquidation of debts by borrowers by the use of certificates of claim, in some cases accepting these certificates at full face value and in other instances accepting them at less than face value but more than market value.  Debtors being able to use certificates of claim in this manner purchased them from the bank's creditors, thus enabling the creditors to liquidate their certificates.  An extensive business of dealing in the Union Trust Co. certificates of claim grew up with the various brokerage houses until finally an exchange for handling such certificates and other claims was established.  The certificates were purchased by the public for speculative purposes as well as for use in the liquidation of debts.

At various times dividends were paid by the liquidator on the certificates of claim, such dividends being endorsed on the back of each certificate when paid.  The market for the exchange of certificates continued until the final liquidation of the bank.  Other banks accepted certificates of claim as collateral security on loans.

The certificates of claim were issued over the signature of the Superintendent of Banks of Ohio and certified that "The Union Trust

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \* \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

Company of Dayton, Ohio, is justly indebted to the above named claimant in the sum of_____dollars." Various provisions appeared on the face of the certificate, among which was "this certificate shall be sole evidence of the above claim and must be presented when each dividend is paid and surrendered on payment of the final dividend." No provision appears on the face of the certificate of claim requiring or providing for the registration of the certificate. No interest coupons were attached to the certificate.

Petitioners Virgil Schaeffer and William G. Pickrel, law partners, purchased in 1937 certain certificates of claim from various persons. After the purchase the certificates were paid through the liquidation of the Union Trust Co. and the taxpayers (including Margaret B. Pickrel) received a profit, all of which they reported as capital gain in 1939. A dividend of 5 percent received in 1938 was not reported in that year.

Petitioner Rieger purchased a certificate of claim which represented a consolidation of the certificates of numerous individuals, previously purchased by Rieger Brothers & Co., which individual certificates were surrendered and one certificate issued in lieu thereof. Liquidating dividends were paid in 1938 on account of the certificate of claim, resulting in a profit to the petitioner which he returned as capital gain in that year. In 1939 a final liquidating dividend was paid which was reported as capital gain in that year. Upon payment of the final liquidating dividend the certificate was surrendered to the superintendent of banks.

On this set of facts petitioners contend that the profit realized was taxable as capital gain under section 117 (f), quoted above. The question thus addressed is: Were the certificates of claim "certificates or other evidences of indebtedness" under the statute?

In *Norman Buckner*, 43 B. T. A. 958, the Board held that certificates of proof of claim issued by a national bank receiver were not such certificates of indebtedness as to justify treating payment thereon as a sale or exchange so as to make applicable section 117 (f). In that case we stated:

* * * We can not accept the view that the careful and exclusive language of the section under consideration was designed to include anything so far afield as a receiver's certificate of proof of claim.

In *Mary D. Gerard*, 40 B. T., A. 64; affd., 120 Fed. (2d) 235, we held that a bond and mortgage given by a corporation to secure a loan from an individual do not come within the terms "bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation," as those terms are used in section 117 (f) of the Revenue Act of 1934. In that case we pointed out that the bond and

mortgage failed to meet the statutory test in that they did not bear interest coupons nor were they registered. We then observed that a more basic reason for the decision was that a bond and mortgage given in the form and circumstances there present "under the old and well established doctrine of *noscitur a sociis*, are not included in the term 'bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation.'" We stated further, "obviously, Congress, by the use of the word 'other,' intended to limit the scope of the term 'evidences of indebtedness.'"

Applying the same tests to the situation at hand, we arrive at the same conclusion announced in the above cases. The certificates of claim bore no interest coupons and there is no evidence that they were registered. Therefore, they would fail of qualification under *Mary D'. Gerard, supra*. Moreover, we do not believe the instruments in question come within either the literal or the intended scope of the statute. *Norman Buckner, supra*.

We are wholly unimpressed by the argument of petitioners' counsel that we should look to the definition of "securities" as contained in the Ohio Securities Law. The Federal statute under consideration is explicit and is to be construed from consideration of its own terms. The all-comprehending definition of a "security" found in G. C. 8624–2 (Ohio Securities Act) can not be read into the language of section 117 (f).

Although certain statements in the stipulations of facts would lead to the conclusion that the certificates of claim were issued by the Trust Co., it appears from the specimen of such certificate attached to the stipulation that it is issued by the state superintendent of banks as an official certification that the Trust Co. is indebted to the claimholder. Thus, it may well be concluded that it was not a certificate or other evidence of indebtedness "issued by any corporation." Likewise, the present situation fails to come within the parenthetical clause "including those issued by a government or political subdivision thereof." The debt was not owed by the State of Ohio. It was a debt of the Union Trust Co. The superintendent of banks is not a political subdivision of the State of Ohio and did not purport to issue a certificate of indebtedness against the state.

We hold that the profit on liquidation was ordinary income and not capital gain.

*Decisions will be entered for the respondent.*