Otto G. Nobis v. Commissioner.
Nobis v. Commissioner
Docket No. 983.
United States Tax Court
1943 Tax Ct. Memo LEXIS 3; 2 T.C.M. (CCH) 1189; T.C.M. (RIA) 43537; December 31, 1943
*3 Robert J. Allison, C.P.A., for the petitioner. Gene W. Reardon, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: Several adjustments were made to the net income shown by petitioner's returns for the calendar years 1938 to 1941, inclusive, and the following deficiencies in income tax were determined: 1938
$ 266.17
1939
211.31
1940
305.98
1941
1,507.70
The sole charge of error is the inclusion in gross income of $1,172,98 for each of the first three years and $2,345.96 for the last, equal amounts having been included in petitioner's reported gross income as amounts received from The Liquidation Corporation of Davenport, Iowa, on debentures issued by it. Petitioner's view, preparing his returns, was that but 50 per centum of the gain realized by him upon the retirement of the debentures was to be taken into account in computing his net income because of the provisions of section 117 of the Revenue Act of 1938 and of the Internal Revenue Code, especially subdivision (f). [1] He still espouses that view. Respondent determined that subdivision (f) is not applicable and that 100 per centum of the admitted gain should be included in gross income. The sole *4 question therefore is the applicability of section 117 (f), supra. [The Facts] The facts are found to be as stipulated. Summarizing them certain selected assets of an insolvent Iowa state bank were transferred to a new banking corporation, in 1932, under a creditor's plan for reorganization, in consideration for the assumption by the new bank of some of the liabilities of the old bank. Pursuant to the plan The Liquidation Corporation was organized and the remaining assets of the old bank were transferred to it for the purpose of converting them to cash and distributing the proceeds and income therefrom in discharge of the claims of the depositors and creditors of the old bank which had not been assumed by the new bank. The *5 Liquidation Corporation issued negotiable, noninterestbearing, liquidation certificates to the depositors and creditors in the amounts of their respective claims and not assumed by the new bank, the certificates being designated "Fifteen Year Debentures." The debentures were issued under an Indenture of Trust, Davenport Bank and Trust Co. being the trustee. The trust indenture is in the usual form. Both it and the debentures issued under it provide that the debentures will be paid at maturity (June 15, 1947), though by the affirmative vote or written consent of a majority in amount of the outstanding indentures they may be extended for a further period of not to exceed 5 years. The authorized capital stock of The Liquidation Corporation is ten shares without par value. The registered owner of each debenture is "entitled by virtue thereof to an interest in the beneficial ownership of the outstanding * * * stock * * * in common with the registered owners of all other debentures * * *." The beneficial interest is subject to all the terms, conditions and limitations of the Declaration of Trust. The debentures are required to be registered in the owner's name on the books of the Corporation *6 and those owned by petitioner are so registered. They are "subject to prepayment in whole or in part by the application for such purpose of the proceeds of the sale or conversion of the property of the Corporation and the income therefrom" and "payment on account" thereof is to be endorsed on the indenture when presented for that purpose. Each indenture "is a corporate obligation," due and payable on June 15, 1947 unless previously called for payment or extended as provided in the contract. Petitioner purchased as an investment debentures having a face value of $46,919.18 at a total cost of $7,380. Prior to the beginning of the first taxable year before us, i.e., prior to January 1, 1938, he had received distributions on the debentures held by him aggregating $10,556.82, or $3,176.82 in excess of his cost. During each of the taxable years 1938, 1939 and 1940 he received $2,345.96 (5 per cent distributions) and during 1941 he received $4,691.92 (10 per cent distribution). 50 per centum of each amount was included in gross income for each year "on the basis [in the language of the stipulation] that such amounts represented a long-term capital gain." (See Section 117 (a) and (b), I.R.C.). *7 [Opinion] As indicated at the outset the issue is the narrow one: Is Section 117 (f) applicable? Inferentially respondent concedes that it is if the debentures are "certificates or other evidences of indebtedness" and if the amounts received by petitioner were in "retirement" thereof within the purview of the statute. Upon brief respondent places his chief reliance on Virgil Schaeffer et al., 47 B.T.A. 727, and the cases cited therein. [2] The Schaeffer case has been reversed (sub nom. Rieger et al. v. Commissioner, 139 Fed. (2d) 618 since the briefs were filed. Petitioner relies upon the rationale of O. P. P. Holding Co., 30 B.T.A. 337, affirmed 76 Fed. (2d) 11; Proctor Shop, Inc., 30 B.T.A. 721, affirmed 82 Fed. (2d) 792; Richmond, Fredericksburg & Potomac R. Co., 33 B.T.A. 895, affirmed 90 Fed. (2d) 971; Commissioner v. Schmoll Fils Associated, Inc., 110 Fed. (2d) 611; Com. v. Palmer, Stacy-Merrill, Inc., 39 B.T.A. 636, *8 affirmed 111 Fed. (2d) 809; Haffenreffer Brewing Co., 41 B.T.A. 443, affirmed 116 Fed. (2d) 465; John Kelley Co., 1 T.C. 457 (on appeal 7 C.C.A. [3]) and similar cases. The cases cited by petitioner, in our judgment, clearly support his contention that the debentures issued by The Liquidation Corporation were "evidences of indebtedness issued by * * * [a] corporation * * * in registered form." On the authority of those cases it is so held. We need not decide in this case whether we will continue to adhere to the views expressed in the Schaeffer case or adopt those of the Circuit Court of Appeals in the reversing opinion. The cases are distinguishable upon their facts, some of which will now be pointed out. In the Schaeffer case, as in the Gerard case, the documents relied upon *9 as being "evidences of indebtedness" were merely certificates of proof of claim issued by a bank receiver. Here the debentures were issued by a corporation. In the cited cases the certificates were payable only in the event funds were collected. Here the debentures were, by their terms, payable at maturity in full. It well may be, as respondent points out, that there is some doubt the debentures will be paid in full inasmuch as the assets available for payment consist only of those not deemed to be worth 100 cents on the dollar at time the corporation was formed; but that is only a circumstance to be considered in determining the value of the debentures. They contain an unconditional promise to pay and therefore are evidences of indebtedness. The certificates issued in the Schaeffer and Gerard cases, in the judgment of the Board, had not been registered. The Circuit Court of Appeals held that those issued in the Schaeffer case had been registered inasmuch as they were the "sole evidence of the claim and must be presented when each dividend is paid and surrendered upon payment of the final dividends" and were obviously recorded by the Deputy Superintendent of Banks in *10 charge of the liquidation of the bank upon the books kept by him. In the instant case, however, it is clear the debentures were registered and respondent makes no claim that they were not. Thus even if we chose to adhere to the views expressed in our opinion - and we deliberately refrain from stating whether we do or not - we still could not uphold respondent's determination that the debentures are not evidences of indebtedness issued by a corporation in registered form. The remaining question, suggested by respondent upon brief but not argued at any length, is whether the amounts received by petitioner were "received * * * upon the retirement of * * * debentures." We think that they were. One definition of retire is "to withdraw" from circulation or from the market; to take up or pay; as to retire bonds; to retire a note." Webster's New International Dictionary. In 54 Corpus Juris 739 it is said: The term may be used in either a transitive or intransitive sense. This word [retire] is susceptible of various meanings according as it is applled to various circumstances (Elsam v. Denny, 15 C.B. 87. 94, 80 E.C.L. 94, 139 Reprint *11 351); and it has been variously defined as meaning to recover; to redeem; to regain by the payment of a sum of money (Century Dictionary quoted in Empire Security Co. v. Berry, 211 Ill. App. 278); to separate or withdraw (Standard Dictionary quoted in State v. Love, 95 Nebr. 573, 145 N.W. 1010); to withdraw from active service. The debentures were callable for payment "in whole or in part * * * without interest." They were required to be presented for payment to the trustee and it was required to endorse on them the payment or payments made. Thus it is clear that each payment reduced pro tanto the amount payable under the debentures. To that extent we think they were retired. In our judgment respondent erred in making the adjustment to net income presently in issue. Others made by him and not questioned in this proceeding require that the deficiencies be recomputed. Decision will be entered under Rule 50.
Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(f) Retirement of Bonds, Etc. - For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidence of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.↩
2. Norman Buckner, 43 B.T.A. 958, and Mary D. Gerard, 40 B.T.A. 64, aff'd 120 Fed. (2d) 235↩. 3. TC decision subsequently reversed by CCA-7, 146 Fed. (2d) 466↩.