REQUESTED BY: Senator Chris Beutler Member of the Legislature State Capitol Building Lincoln, Nebraska 68508
Dear Senator Beutler:
You have asked our opinion as to whether political subdivisions holding deferred compensation funds withheld from their employees' salaries pursuant to Neb.Rev.Stat. 48-1401
(Reissue 1978) may invest such funds in state or federal savings and loan associations. You state that you desire this opinion so that you may see if it is necessary or advisable to introduce a legislative bill this session. We conclude that such political subdivisions may make such investments.
Our court held, in Nebraska League of Savings and LoanAssociations v. Mathes, 201 Neb. 122, 266 N.W.2d 720
(1978), that political subdivisions of this state were prohibited by Article XI, Section 1 of the Constitution of this state from depositing funds in savings and loan associations, except as authorized by Article XV, Section 17(2) of that Constitution. The reason for the prohibition was that a deposit in such an association constituted the acquisition of an ownership or proprietary interest in a private corporation or association, prohibited by Article XI, Section 1.
Article XV, Section 17(2) authorize the Legislature, notwithstanding any other provision of the Constitution, to authorize the investment of retirement or pension funds of political subdivisions in such investment as the governing body of the subdivision may determine, but subject to such limitations as the Legislature may provide.
The question, then, is whether deferred compensation funds are `retirement or pension funds,' as that term is used in Article XV, Section 17(2). The answer to that question is certainly not beyond dispute, but we have concluded that they are.
Deferred compensation plans for state and local government employees are authorized by 26 U.S.C. § 457. This statute provides that sums may be withheld from the salaries of the employees, to be paid to them at a later time. Such sums withheld are not subject to federal income taxes in the year earned, but only in the year in which they are paid.
The answer to the question of whether this is a retirement or pension plan is made unclear by the fact that26 U.S.C. § 457 provides that the sums withheld may not be made available to the participant earlier than when he or she is separated from service or is faced with an unforeseeable emergency. This means that an employee who started participation in the plan at age 30 and who terminated employment at age 35 and took employment in the private sector could immediately receive all of the sums deferred. It can be argued that this is not a retirement plan, since the employee has not `retired' in the ordinary sense, since he is still actively employed, and has not qualified for the ordinary retirement of public employees. Furthermore, the provision about payment because of an emergency means that the employee, under certain conditions, can get the money while he is still employed by the governmental subdivision.
Nevertheless, we are inclined to feel that the deferred compensation plan is a retirement program. In the first place, one of the purposes of deferring the income is to avoid including it during the years when one is employed, and, perhaps, in a high tax bracket, and to permit showing it during retirement years when the employee will, presumably, be in a much lower bracket. To accumulate it for several years and then show it all in one year, while still employed, as in the case of the 35 year old worker who received it when he ceased public employment, would defeat one of the basic purposes of the program. We believe this is not ordinarily contemplated, but, instead, the withheld compensation is planned to be paid during retirement years, as a supplement to other retirement programs.
This belief is reinforced by § 48-1401(4), which provides that the program shall be in addition to, and not a part of, any existing retirement or pension system. Further, in 1978 U.S. Code Cong. Ad. News, p. 6828, we find a reference to salary-reduction deferred compensation plans as a means of providing retirement income. We are confident that most participating employees regard the plan as a retirement program, and the various plans are geared to that end.
The word `retire' is not defined in the Constitution to mean cessation of public employment at any particular age, or to preclude other nonpublic employment afterwards. InState ex rel. Haberlan v. Love, 95 Neb. 573,145 N.W. 1010 (1914), the court used a dictionary definition defining `retire' as meaning to withdraw from active service, as an officer of the Army or Navy, or to separate or withdraw. Under this definition, perhaps any termination of service would be `retirement,' even though the employee did not yet qualify for the agency's regular retirement benefits.
Furthermore, the Legislature apparently regarded the funds deferred as retirement funds, since § 48-1401(3) authorizes political subdivisions to invest the deferred income in savings and loan associations. If these are not pension or retirement funds, such investments would be prohibited by our Constitution, and we would be required to hold the provision unconstitutional. We try to avoid that result, if possible. We therefore conclude that such funds held by political subdivisions of the state are pension or retirement funds, as contemplated by Article XV, Section 17(2) of the Constitution.
You also ask whether University of Nebraska, state college and public school employees may come under deferred compensation plans, either by virtue of § 48-1401, or other statutory provisions. Section 48-1401 applies to all political subdivisions or agencies of the state, except an agency subject to Neb.Rev.Stat. §§ 84-1504 to 84-1506 or Neb.Rev.Stat. §§ 85-106, 85-195, or 85-320.
Neb.Rev.Stat. § 84-1504 (Reissue 1976) makes provision for a deferred compensation program for `any state employee on any judge who is not a state employee, including a person under contract providing services to the state who is not employed by the University of Nebraska, or any of the state colleges, or technical community colleges.'
Neb.Rev.Stat. § 85-106 (Supp. 1980) authorizes the Board of Regents to enter into agreements with its employees for a reduction of salary or wages for the purchase by the Board of Regents of annuity contracts for such employees, under the provisions of the Internal Revenue Code, as amended.
Neb.Rev.Stat. § 85-195 (Supp. 1980) authorizes the Board of Trustees of the Nebraska State Colleges, any technical community college area board, and the Board of Regents of the University of Nebraska to enter into similar contracts with their employees, under the provisions of the Internal Revenue Code, as amended. Section 85-320 (Supp. 1980) gives the same authority to the Board of Trustees of the Nebraska State Colleges.
Section 48-1401 applies to any political subdivision of the State of Nebraska, with the exceptions noted. A public school district is a political subdivision of the state, and is not specifically excepted by § 48-1401. Therefore, public school districts may offer deferred compensation programs to their employees pursuant to that section.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General